564 P.2d 971
Jacob C. FERGUSON,
Petitioner-Appellant,

v.

BOARD OF TRUSTEES OF BONNER COUNTY SCHOOL DISTRICT NO. 82, a Municipal Corporation of the State of Idaho, et al., Respondents.

No. 11967.

Supreme Court of Idaho.

April 28, 1977.

Rehearing Denied June 20, 1977.

James E. Hunt, Greene & Hunt, Sandpoint, Peter B. Wilson, Wilson & Walter, Bonners Ferry, for petitioner-appellant.

Jon K. Hammarberg and Lucinda Weiss, Bandelin & Weiss, Sandpoint, E. L. Miller, Miller & Knudsen, Coeur d'Alene, for respondents.

BAKES, Justice.

This case involves questions concerning the statutory and constitutional adequacy of the notice and hearing afforded a teacher who was discharged for cause by the board of trustees of a school district. It is complicated by the fact that the teacher walked out of the hearing as it commenced.

On May 15, 1973, the school district administrator appeared at a regular meeting of the board of trustees of the Bonner County School District and recommended to the board that Jacob Ferguson, a teacher in the Bonner County schools, be discharged for improper grading practices and insubordination. Based on the showing of grounds for discharge put forth by the administrator, the board unanimously resolved to issue the following "Resolution For Discharge of Teacher" which was served upon Ferguson:

"It is Resolved by:

"The Board of Trustees of Bonner County School District No. 82 of Bonner County, Idaho, being fully advised in the premises, and being of the opinion that Jake Ferguson, a teacher in said district, should be discharged for the following reasons:

"Applying a grading system for an improper purpose and which does not relate to the level of difficulty of work to such an extent as to constitute gross neglect of duty in failing to report progress of students to parents accurately, and that said acts constitute insubordination in that the teacher has previously been instructed to correct this deficiency and neglected to do so.

"A hearing may be requested by Jake Ferguson within 30 days after receipt of a copy of this resolution for the purpose of showing reasons why said discharge should not be effected.

"Said hearing must be held within 15 days after the request is received. At said hearing, the teacher may be represented by counsel and may present evidence on his own behalf and examine any person who may have spoken against him.

"It was moved, seconded and carried that the above resolution be adopted."

The text of this resolution follows the format recommended by the State Board of Education in its regulations prescribing procedures for the discharge of teachers.

Regular school board meetings are open and the minutes of proceedings made public, but for personnel matters such as the discharge of a teacher the Bonner County board of trustees retired to executive session during which no minutes were taken. Consequently, there is no record of the information placed before the board of trustees by the school administrator concerning the grounds for Ferguson's discharge.

Jacob Ferguson timely requested a hearing which was held on June 26, 1973. Present at this hearing were Ferguson (appearing without counsel), the attorney for the school district, the school administrator and other school officials, several students and parents who were to appear as witnesses against Ferguson, and the five trustees. The attorney for the school district stated initially that the resolution was merely an accusation and not a final determination of cause for discharge by the board. Ferguson made it clear from the outset that he did not care to hear any testimony and that he would not present any witnesses, because he believed the board had already made up its mind. He stated that the resolution sounded conclusive to him and that he had assumed that the board had already heard all the evidence against him. It was again

stated by a trustee that the board had not yet made a final decision—that that was the purpose of the hearing. The board members and school attorney asked Ferguson if he would like a continuance and urged him to consult an attorney. However, Ferguson walked out of the hearing before the school district presented any evidence relating to the cause of discharge. After he left, the board members debated whether they should proceed with the hearing but concluded that they should not put on any evidence against Ferguson since he was not present. The board then unanimously voted to discharge him.

Ferguson subsequently petitioned the district court for an alternative writ of mandamus, seeking to compel the school trustees to reinstate him as a teacher in the Bonner County schools. In a memorandum opinion, the district court concluded that the school board had substantially complied with I.C. § 33–513(4)[1] and the procedures adopted by the State Board of Education, and also that the board of trustees would have proceeded with the hearing if Ferguson had not left. The court also concluded that Ferguson had knowingly waived his right to a meaningful hearing and that the board had done all that was constitutionally required regarding notice and opportunity to be heard concerning Ferguson's discharge.

Ferguson alleges that the board of trustees deprived him of his statutory and constitutional rights by the manner in which it discharged him. We will first discuss the statutory issues, then the constitutional issues, and finally the legal effect of Ferguson's departure from the hearing.

■ In I.C. § 33–513(4), the board of trustees of each school district is given authority to discharge certificated professional personnel for the following reasons:

"[F]or continued violation of any lawful rules or regulations of the board of trustees or of the state board of education, or for any conduct which could constitute grounds for revocation of a teaching certificate."

While it is apparent from a reading of the statute that school boards are given broad authority to define what constitutes grounds for discharge by promulgation of rules and regulations governing professional conduct of school teachers, this provision also establishes that discharge of a teacher must be based upon rules and regulations which are "lawful," or for conduct which could constitute "grounds for revocation of a teaching certificate." This subsection also requires that the State Board of Education establish discharge procedures and that local school boards comply with these procedures.

"No certificated professional employee shall be discharged during a contract term except under procedures prescribed by the state board of education." I.C. § 33–513(4).

Pursuant to this statute, the following procedure has been prescribed by the State Board of Education:

"A. A resolution for discharge must be adopted by the local board of trustees and recorded in its minutes. Such resolution must state the reasons for discharge and provide for a hearing. (A form for this resolution is included.)

"B. A copy of the resolution must be delivered to the teacher and proof of a delivery must be obtained.

"C. A hearing must be held upon request of the teacher. The request for a hearing must be made by the teacher within 30 days after receipt of his copy of the resolution for discharge. The board

---

1. "33–513. *Professional personnel.*—The board of trustees of each school district including any specially chartered district, shall have the following powers and duties:

.    .    .    .    .

"4. To suspend, grant leave of absence, place on probation or discharge certificated professional personnel for continued violation

of any lawful rules or regulations of the board of trustees or of the state board of education, or for any conduct which could constitute grounds for revocation of a teaching certificate. No certificated professional employee shall be discharged during a contract term except under procedures prescribed by the state board of education."

must hold the hearing within 15 days after receipt of the request.

"D. At the hearing the teacher may be represented by counsel, may present evidence, and may examine witnesses.

"E. The board may present evidence substantiating reasons for discharging the teacher, examine witnesses and be represented by counsel.

"F. After said hearing, the board will consider the case in view of all known facts and circumstances and decide by majority vote whether or not the teacher shall be discharged. A record of the decision must be included in the minutes and written notice of the decision delivered to the teacher." (Adopted by State Board of Education, September 11–12, 1964, reprinted Clk.Tr., p. 65).

The recommended form for a resolution for discharge (referred to in subparagraph "A" above) was used by the school board in this case and is quoted *supra*, page 973. The trial court concluded, and we agree, that the school board substantially complied with the discharge procedures established by the State Board of Education pursuant to I.C. § 33–513(4), at least until Ferguson left the hearing, the effect of which will be discussed below.

■ Ferguson contends that he had a statutory right to have cause for his discharge established at the hearing, even in his absence. However, neither the statute nor the State Board of Education procedures require such a result. While we agree that the board of trustees could not discharge him except upon its finding of cause as required by I.C. § 33–513(4), there is no requirement that such cause be established at a hearing unless one is requested by the teacher. A hearing as referred to in the statute denotes the right to confront witnesses, cross examine them, and present evidence on the teacher's behalf. *Adams v. Marshall,* 212 Kan. 595, 512 P.2d 365 (1973);

and *cf. Application of Citizens Utilities Co.,* 82 Idaho 208, 351 P.2d 487 (1960). Ferguson knowingly and wilfully chose not to participate and avail himself of the benefits which the statute intended. We agree with the trial court that he waived his right to the hearing contemplated by the statute and the procedures established by the State Board of Education.

■ Ferguson does not contest the fact that there had been widespread dissatisfaction with his grading methods for some time among school officials, parents and students.[2] Nor does he contend that he was unaware that this was the reason that the school administrator had recommended his discharge. The resolution and the minutes of the board of trustees indicate that he was discharged for this reason (which it concluded constitutes "gross neglect of duty" under I.C. § 33–1208 setting forth grounds for revocation of a teaching certificate). This information had been provided by the school administrator to the board at the May 15, 1973, session at which the resolution was adopted. In the absence of any refutation of the information provided by the school administrator, and having in effect waived his hearing, the statutory requirement that a discharge of a teacher be effected only for cause is satisfied in this case.

■ We turn next to Ferguson's attack on the constitutional sufficiency of the notice and hearing. The Supreme Court of the United States has recently held that the determination of whether a particular right or privilege is a property interest (and is therefore entitled to procedural due process protection under the Fourteenth Amendment of the Constitution of the United States) is a matter of state law. *Bishop v. Wood,* 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976). As a tenured teacher for Idaho schools with the right to automat-

---

**2.** This record contains several depositions and exhibits from the proceedings for a writ of mandamus before the district court, which substantiate the allegation that Ferguson's unorthodox and arbitrary grading practices had caused conflict between him and the school officials. Thus, while we cannot know what specific information was placed before the board of trustees by the school administrator, we accept the school board's decision that cause for discharge had been established.

ic annual renewal of his teaching contract, I.C. § 33–1212, and the right not to be discharged except for cause, I.C. § 33–513(4), Ferguson's teaching position was a property interest and he could not be deprived of this interest without notice and an opportunity to be heard. *Cf. Loebeck v. Idaho State Board of Education,* 96 Idaho 459, 530 P.2d 1149 (1975); *Arnett v. Kennedy,* 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974); *and see Buckalew v. City of Grangeville,* 97 Idaho 168, 540 P.2d 1347 (1975).

■ The question in this case is whether the procedures followed have satisfied the constitutional test. The United States Supreme Court has not elaborated on the precise procedures to be required in each instance, but has stated that each case turns on the facts and that what is required is an examination of the competing interests involved. *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). Ultimately, procedural due process—the right to notice of charges and an opportunity to be heard—is a protection against the arbitrary deprivation of a property right. *Fuentes v. Shevin,* 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1971).

Ferguson claims that the "Resolution For Discharge of Teacher" was so deficient as to be invalid as notice. He argues that the language used in the resolution regards his discharge as an accomplished fact and improperly places the burden on him to call the hearing and to show cause why he should not be discharged.

■ We agree with the appellant that the resolution does suggest that the decision regarding his discharge had already been made. We expressly disapprove of its use in the future. However, we do not agree that this necessarily constitutes a violation of due process. The notice clearly informs Ferguson of the contemplated discharge, the reasons for such action, and his rights to a hearing, to counsel and to present evidence. To the extent that the notice tended to sound conclusory it was improper, for as we have stated the board could not constitutionally proceed without giving Ferguson notice and the right to a hearing. If this language was misleading, however, we believe that it was cured the night of the hearing when the attorney for the school district stated at the outset:

"Basically, all I have discussed with the Board is a procedural point and it is my feeling in that the vote as given to Mr. Ferguson only sets forth an accusation, not a final determination by the Board. It would be necessary for the Board or for the District to present testimony one way or the other and for Mr. Ferguson to have the opportunity to cross examine or question anybody that is presented and Wayne—Mr. Hagadone—could you swear witnesses that will be called to testify?"

After making it clear that a decision had not yet been reached regarding his discharge, both the attorney and the board offered to delay the hearing to a later date to give Ferguson time to consult an attorney and to prepare a defense. However, Ferguson declined.

■ The notice was also in error to the extent that it suggested that the burden was on Ferguson to "[show] reasons why said discharge should not be effected." The burden was on the school district seeking to discharge Ferguson to establish cause for discharge. However, this is not a constitutional requirement, but as we have said, one mandated by I.C. § 33–513(4). On the other hand, once the school district had established *prima facie* grounds for discharge, it would have been incumbent on Ferguson to present evidence rebutting the charges. Thus, the information in the notice that Ferguson should be prepared to present rebuttal evidence is helpful, but it is misleading because it appears to put the initial burden of presenting evidence on Ferguson. Again, we believe this problem was cured at the hearing, when the attorney for the school district stated in Ferguson's presence that he recognized that he had the burden of establishing cause for discharge, and the record indicates that he was prepared to present such evidence.

Ferguson challenges the constitutional adequacy of the hearing in several other

respects. He alleges that the board attended the hearing with a biased frame of mind because it had already received evidence of grounds for his discharge. This argument has been raised without success in *Griggs v. Board of Trustees of Merced Union High School Dist.*, 61 Cal.2d 93, 37 Cal.Rptr. 194, 389 P.2d 722 (1964), and more recently in *Weissman v. Board of Education of Jefferson County*, 547 P.2d 1267 (Colo.1976). In these cases, it was claimed that the procedure of the school board whereby it first made an *ex parte* finding of cause to dismiss the teacher deprived the teacher of a fair hearing because the board then presided over the teacher's dismissal hearing with a biased attitude. The Supreme Courts of Colorado and California rejected the arguments, noting that such a hearing is also in the teacher's interest:

> "[W]e believe that the board may properly conduct a limited preliminary inquiry to determine if there is any real substance to the charge against the teacher. The formal hearing process can be both time-consuming and costly, and may subject a teacher to great embarrassment. These adverse consequences may be avoided by a measure of pre-hearing familiarity with the case." 547 P.2d at 1275.

> "We find nothing improper in the conduct of the members of the board. . . It is . . . clear that, before there is any occasion for a public hearing, the board must make an ex parte determination that there is good cause for dismissal, and, in order to be able to make this decision, the board must have some knowledge of the facts." 389 P.2d at 725–726.

Our consideration of the problem in this case is made more difficult because in the end the board of trustees relied completely on the evidence placed before it at the earlier meeting. However, this fact (brought about by Ferguson's precipitous departure from the hearing) has no bearing on the state of mind of the trustees at the hearing and the record suggests that the board was prepared to deal fairly and open-mindedly with the issue if the hearing had proceeded.

■ We find support in our ruling that there is no constitutional infirmity in the school board sitting as decision-makers at this dismissal hearing in the recent United States Supreme Court decision in *Hortonville Joint School District No. 1 v. Hortonville Education Assoc.*, 426 U.S. 482, 96 S.Ct. 2308, 49 L.Ed.2d 1 (1976). That case dealt with possible bias of school board members at teacher dismissal hearings where the cause for dismissal had been an admittedly illegal strike by the teachers. Rejecting the argument that the school board's participation in the unsuccessful contract negotiations which culminated in the strike made the board biased, the Supreme Court stated:

> "Mere familiarity with the facts of a case gained by an agency in the performance of its statutory role does not, however, disqualify a decisionmaker. *Withrow v. Larkin*, 421 U.S. 35, 47, 95 S.Ct. 1456, 1464, 43 L.Ed.2d 712 (1975); . . ." 96 S.Ct. at 2314.

And the Court concluded:

> "Respondents have failed to demonstrate that the decision to terminate their employment was infected by the sort of bias that we have held to disqualify other decisionmakers as a matter of federal due process. A showing that the Board was 'involved' in the events preceding this decision, in light of the important interest in leaving with the Board the power given by the state legislature, is not enough to overcome the presumption of honesty and integrity in policymakers with decisionmaking power." 96 S.Ct. at 2316.

In *Withrow v. Larkin, supra,* a case arising out of a different factual situation but in which it was claimed that an adjudicative body was biased because it had also been involved in the investigation of charges, the Supreme Court noted that actual bias of a decisionmaker is constitutionally unacceptable but observed:

> "The contention that the combination of investigative and adjudicative functions necessarily creates an unconstitutional risk of bias in administrative adjudication

has a much more difficult burden of persuasion to carry. It must overcome a presumption of honesty and integrity in those serving as adjudicators; and it must convince that, under a realistic appraisal of psychological tendencies and human weakness, conferring investigative and adjudicative powers on the same individuals poses such a risk of actual bias or prejudgment that the practice must be forbidden if the guarantee of due process is to be adequately implemented." 421 U.S. at 47, 95 S.Ct. at 1464. There is no indication in this record of actual bias brought about by the school board's earlier determination that the school administrator had demonstrated to the board cause for discharge of Ferguson, and therefore we conclude that the action of the school board in preliminarily determining that sufficient cause for discharge existed (in order to give Ferguson notice) did not violate due process.

 Our assessment of the procedural adequacy of the hearing is made difficult because the teacher left his own hearing without explanation and before any evidence was presented. The trial court found that the board would have proceeded with the hearing if Ferguson had not left, and the record confirms this finding; the attorney for the school district told Ferguson he was prepared to present evidence and again made this statement after Ferguson left to the several school officials, parents and students who attended the hearing as potential witnesses for the school district. Had Ferguson not requested a hearing, the board could have proceeded without hearing evidence. We cannot say that the school board's decision not to hear evidence against Ferguson after he left the meeting was a denial of due process.

Ferguson maintains that by leaving he did not intend to waive or abandon his right to a hearing. He now contends that he expected that the board would proceed to hear the evidence against him although he said nothing to this effect before leaving. We agree with the trial court that regardless of his intent or expectations at the time he left the hearing, Ferguson waived his right to a hearing and cannot now attack the subsequent actions of the school board.

The judgment of the district court denying Ferguson's petition for a writ of mandamus is affirmed. Costs to respondents.

McFADDEN, C. J., and DONALDSON, SHEPARD and BISTLINE, JJ., concur.