970 P.2d 14

**Judy MARESH, Plaintiff–Appellant,**

v.

**STATE of Idaho, DEPARTMENT OF HEALTH AND WELFARE, by and through its Director, Linda CABALLERO, Defendant–Respondent.**

No. 23964.

Supreme Court of Idaho,
Moscow, September 1998 Term.

Nov. 24, 1998.

Rehearing Denied Jan. 15, 1999.

J. Carl Mickelsen, Moscow, for appellant.

Alan G. Lance, Attorney General; Marcy J. Spilker, Deputy Attorney General, Lewiston, for respondent. Marcy J. Spilker argued.

SILAK, Justice.

## NATURE OF THE CASE

This is an appeal to determine whether respondent Department of Health and Welfare (the Department) was required to follow the procedures which govern contested cases as established in the Idaho Administrative Procedure Act (IDAPA) when the Department denied the application of appellant Judy Maresh to participate in a day treatment group conducted by the Department. For the reasons explained below, we affirm the judgment of the district court.

## I.

## FACTS AND PROCEDURAL BACKGROUND

On June 19, 1995, Judy Maresh applied for mental health services from the Department by requesting that she be allowed to participate in the Division of Mental Health's Moscow Positive Action Club (MPAC), a day treatment group. Maresh went through the normal screening process conducted by the group's organizer, a Department employee.

In a letter dated July 10, 1995, Maresh was informed by the Department that she would not be allowed to join the MPAC group because the services provided by the MPAC group did not fit her needs, and would not be

clinically appropriate. The Department did not inform Maresh of any available procedures or time limits for reconsideration, or other administrative relief pertaining to the denial of her request to join the MPAC treatment group.

Maresh filed a complaint for declaratory judgment claiming that a process for appeal of the Department's denial of her application for access to the MPAC group is required under the IDAPA. In granting the Department's motion for summary judgment, the district court held that the Department's denial of group treatment is not an "order" which triggers the contested case provisions of the IDAPA, and that the right to participate in the MPAC group is not a property interest protected by due process under either the Idaho or United States Constitutions. Maresh appeals from the district court's order granting the Department's motion for summary judgment.

## II.

## ISSUES ON APPEAL

Maresh raises the following issues on appeal:

1. Whether the district court erred in holding that the Department was not required to follow the contested case provisions of the IDAPA;
2. Whether the district court erred in holding that Maresh was not entitled to the protection of procedural due process pursuant to the Fourteenth Amendment of the United States Constitution.
3. Whether the district court erred in holding that Maresh was not entitled to the protection of procedural due process pursuant to Article I, Section 13 of the Constitution of the State of Idaho.

## III.

## STANDARD OF REVIEW

The parties do not controvert any material facts involved in this case. Indeed, the parties entered into a Stipulation of Facts before the district court. Thus, only questions of law are presented on this ap-

peal. This Court exercises free review over a district court's conclusions of law. *Marshall v. Blair*, 130 Idaho 675, 679, 946 P.2d 975, 979 (1997). Hence, this Court may substitute its view for that of the district court on the issues of law presented by this appeal. *Id.*; Standards of Appellate Review in State and Federal Courts, *Idaho Appellate Handbook* § 4.2 (1996).

## IV.

## ANALYSIS

### A. The District Court Correctly Held That The Department Was Not Required to Follow The Provisions of The IDAPA Governing Contested Cases.

■ Maresh contends that the Department failed to comply with the procedures required by IDAPA when it denied her request to participate in the MPAC group therapy treatment. In particular, she contends that the Department was required to follow the provisions of the IDAPA which govern contested cases.

With regard to contested cases, Section 67–5240 of the Idaho Code states, in pertinent part, that, "[a] proceeding by an agency, . . . that may result in the issuance of an order is a contested case and is governed by the provisions of this chapter." I.C. § 67–5240. Consequently, the provisions of IDAPA governing contested cases must be followed when an agency engages in a proceeding that may result in the issuance of an order. I.C. § 67–5240 (1995).

It is undisputed that the Department is an agency as defined by IDAPA. As defined by IDAPA, " '[o]rder' means an agency action of particular applicability that determines the legal rights, duties, privileges, immunities, or other legal interests of one or more specific persons." I.C. § 67–5201(12) (Supp.1998). Whether there was a determination of the "legal rights, duties, privileges, immunities, or other legal interests" of Maresh turns on the interpretation of both the Regional Mental Health Services Act, I.C. §§ 39–3123 to 3139, and Title XIX of the Social Security Act, 42 U.S.C. §§ 1396–1396v. Maresh contends these statutes are sources of her legal

right or other legal interest in the particular treatment for which she applied. For the reasons discussed hereafter Maresh's contentions are unpersuasive.

### 1. The Regional Mental Health Services Act.

■ The stated purpose of the Regional Mental Health Services Act (the Act) is to delegate the "responsibility and authority to establish and maintain regional comprehensive mental health services *in order to extend appropriate mental health services.*" I.C. § 39–3123 (1998) (emphasis added). The Act recognizes that "it is the policy of the state to provide mental health services to all citizens *in need of such care.*" Id. (emphasis added). It further recognizes that citizens have a right to "the best mental health services that the state *is able to provide.*" I.C. § 39–3125 (emphasis added). These several parts of the Act indicate that no legal right, privilege or other legal interest is established absolutely in any particular type of treatment for any individual.

Moreover, Section 39–3127 does not mandate that every service be provided. Section 39–3127 of the Idaho Code merely lists services that may be offered in a comprehensive health center; it does not require that any particular services be provided nor that every service must be available to every applicant. I.C. § 39–3127 (1998). Section 39–3127 states in pertinent part as follows:

"A regional mental health service shall include one (1) or more of the services leading to the establishment of a regional comprehensive mental health center. A comprehensive mental health center may include such services as:

(1) Short-term hospitalization for psychiatric treatment in an approved medical facility within the region;

(2) Partial hospitalization;

(3) Outpatient diagnosis and treatment;

(4) 24–hour emergency psychiatric services;

(5) Community consultation and education;

(6) Diagnostic services for other agencies;

(7) Rehabilitative services;

(8) Precare and postcare services in cooperation with a state mental hospital;

(9) Training of mental health personnel;

(10) Research and evaluation. [1969, ch. 202, § 5, p. 589.]"

I.C. § 39–3127. By its terms, this section does not establish a legal right, privilege, or other legal interest in any particular treatment in favor of any individual. Section 39–3127 does not establish a legal right, privilege, or other legal interest of Maresh in participating in the MPAC treatment.

■ The statutory scheme of the Act allows for the type of clinical determination at issue in the instant case. The Department's denial of Maresh's application to participate in the MPAC group did not determine that Maresh had no right to any treatment; rather it determined that the particular treatment she applied for was not appropriate. In fact, the Department determined that the MPAC treatment services were not clinically appropriate because Maresh's needs would not be met through the group and that her disruptive behavior in past interactions caused concern for the welfare of the other clients in the group.

**2. Title XIX of the Social Security Act.**

■ "Title XIX of the Social Security Act establishes Medicaid and authorizes grants to states in order to finance medical care for indigent Americans." *McCoy v. State,* 127 Idaho 792, 794, 907 P.2d 110, 112 (1995); 42 U.S.C. §§ 1396–1396v (1992). Although states participating in the Medicaid program are required to give care to eligible individuals in at least seven general categories, they are given considerable flexibility in determining the scope of coverage they must provide. *McCoy v. State,* 127 Idaho at 794, 907 P.2d at 112. Title XIX does not require that a state provide funding for all medical treatment falling within one of these general service categories. *Id.* (citing *Beal v. Doe,* 432 U.S. 438, 444, 97 S.Ct. 2366, 2371, 53 L.Ed.2d 464 (1977)).

■ Further, neither Title XIX nor the federal regulations explicitly provide that coverage of every procedure that a physician deems medically necessary is required. *McCoy v. State,* 127 Idaho at 794, 907 P.2d at 112. "The Medicaid program is not intended to meet all the medical needs of recipients. Rather, the goal is to provide medical assistance 'as far as practicable under the conditions in [each] state.'" *Bumpus v. Clark,* 702 F.2d 826, 827 (9th Cir.1983). There is no indication in the Medicaid statutes upon which Maresh relies that Congress intended to establish legal rights or other legal interests in the particular type of treatment services which Maresh requested. Consequently, the Medicaid provisions relied upon by Maresh do not confer upon her a legal right or interest in the particular treatment she sought. *See, e.g., O'Bannon v. Town Court Nursing Center,* 447 U.S. 773, 100 S.Ct. 2467, 65 L.Ed.2d 506 (1980) (holding that similar Medicaid provisions upon which the claimants relied did not confer a right to residence in the nursing home of one's choice).

In sum, the Department's denial of Maresh's application to participate in the MPAC treatment was not a determination of any legal right or other legal interest, because no such right or interest existed by virtue of the Act or the Medicaid statutes. Thus, the decision that the MPAC group therapy was not appropriate was not an order which would trigger the application of the requirements of IDAPA provisions governing contested cases. We thus affirm the summary judgment of the district court with respect to Maresh's statutory claim.

**B. The District Court Correctly Held That Maresh Was Not Entitled to The Protection of Procedural Due Process Pursuant to The Fourteenth Amendment to The United States Constitution.**

■ Maresh contends that she has a legal interest in participating in the MPAC group therapy which entitles her to the protection of due process pursuant to the Fourteenth Amendment to the United States Constitution. The due process clause of the Fourteenth Amendment "prohibits deprivation of life, liberty, or property without 'fundamental

fairness' through governmental conduct that offends the community's sense of justice, decency and fair play." *Moran v. Burbine*, 475 U.S. 412, 432–34, 106 S.Ct. 1135, 1146–48, 89 L.Ed.2d 410 (1986). Also, it should be noted at the outset that, "due process is not a concept rigidly applied to every adversarial confrontation, but instead is a flexible concept calling for such procedural protections as are warranted by the particular situation." *Boise Orthopedic Clinic v. Idaho State Ins. Fund*, 128 Idaho 161, 167, 911 P.2d 754, 760 (1996).

■ "To determine whether an individual's due process rights under the Fourteenth Amendment have been violated, a court must engage in a two-step analysis. It must first decide whether the individual's threatened interest is a liberty or property interest under the Fourteenth Amendment." *Schevers v. State*, 129 Idaho 573, 575, 930 P.2d 603, 605 (1996) (citing *Smith v. Meridian Joint Sch. Dist. No. 2*, 128 Idaho 714, 722, 918 P.2d 583, 591 (1996)); *see also, True v. Dep't of Health and Welfare*, 103 Idaho 151, 645 P.2d 891 (1982) (citing *Goss v. Lopez*, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975)). Only after a court finds a liberty or property interest will it reach the next step of analysis, in which it determines what process is due. *Schevers v. State*, 129 Idaho 573, 575, 930 P.2d 603, 605.

As stated by the United States Supreme Court, "[t]he requirements of procedural due process apply only to the deprivation of interest encompassed by the Fourteenth Amendment's protection of liberty and property." *Board of Regents v. Roth*, 408 U.S. 564, 569, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972). Accordingly, the existence of Maresh's right to due process protections regarding her request to participate in the MPAC group therapy treatment depends on whether her interest in participating in the MPAC treatment is within the scope of the liberty or property language of the Fourteenth Amendment.

■ The United States Supreme Court has noted that property interests are "created ... by existing rules, ... such as state law." *Id.* Likewise, this Court has indicated that "determination of whether a particular right or privilege is a property interest is a matter of state law." *Ferguson v. Bd. of Trustees of Bonner Cty. Sch.*, 98 Idaho 359, 564 P.2d 971, 975 (1977) (citing *Bishop v. Wood*, 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976)). Further, determining the existence of a liberty or property interest depends on the "construction of the relevant statutes," and the "nature of the interest at stake." *True*, 103 Idaho at 154, 645 P.2d 891 (citing Tribe, American Constitutional Law, § 10–9, at 515–16 (1978)). Hence, whether a property interest exists can be determined only by an examination of the particular statute or ordinance in question. *Bishop*, 426 U.S. 341, 96 S.Ct. 2074.

While a valid statutory scheme may set forth requirements in such a manner as to create a legitimate claim of entitlement to property, the statutory schemes at issue in the instant case do not. *See, e.g., Powers v. Canyon County*, 108 Idaho 967, 703 P.2d 1342, (1985) (a valid statutory scheme requiring county aid to indigents creates a legitimate claim of entitlement to property). As previously discussed, neither the language of the relevant Idaho Code provisions, nor the language of Title XIX of the Social Security Act, which establishes Medicaid, creates an expectation or leads to an understanding that a particular type of service, such as that requested by Maresh, must be provided. Neither statutory scheme creates a property interest, or legitimate claim of entitlement to participate in the MPAC treatment for Maresh.

"The Fourteenth Amendment's procedural protection of property is a safeguard of the security of interests that a person has already acquired in specific benefits." *Board of Regents v. Roth*, 408 U.S. 564, 576, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Maresh had not already acquired an interest in the specific benefits of the particular type of treatment that she requested by virtue of any statutory scheme. Rather, she had the hope of receiving the services of MPAC. "That hope is not a property right and the frustration of such a hope does not trigger the right to a hearing." *Loebeck v. Idaho State Board of Education*, 96 Idaho 459, 461, 530 P.2d 1149, 1151 (1975) (quoting *Perrin v.*

*Oregon State Board of Education,* 15 Or. App. 268, 515 P.2d 409 (1973)).

A person must have more than an abstract need or desire for a benefit in order to have a property interest therein. *Board of Regents,* 408 U.S. 564, 569, 92 S.Ct. 2701. Further, that person must have more than a unilateral expectation in the benefit; instead, she must have a "legitimate claim of entitlement to it." *Id.* at 577, 92 S.Ct. 2701. Maresh has no legitimate claim of entitlement to the particular type of treatment she requested. Consequently, her interest in participating in that treatment is not a property interest protected by due process under the Fourteenth Amendment to the United States Constitution. Therefore, we affirm the decision of the district court regarding Maresh's Fourteenth Amendment claim.

**C. The District Court Correctly Held That Maresh Was Not Entitled to The Protection of Procedural Due Process Pursuant to Article I, § 13 of The Idaho Constitution.**

Similar to the Federal Constitution, the Idaho Constitution includes a due process clause, which states that "[n]o person shall ... be deprived of life, liberty or property without due process of law." Idaho Const. art. I, Section 13. While this Court has recognized that this clause is "substantially the same" as its federal counterpart, it has also indicated that "the scope is not necessarily the same." *Cootz v. State,* 117 Idaho 38, 40, 785 P.2d 163, 165 (1989) (citing *State v. Peterson,* 81 Idaho 233, 236, 340 P.2d 444, 446 (1959)).

Although the due process clause of the Idaho Constitution is interpreted independently, the Idaho Supreme Court is not necessarily bound by the federal interpretation of due process, this Court "consider[s] the rationale used by the United States Supreme Court in deciding Fourteenth Amendment due process cases." *Schevers v. State,* 129 Idaho 573, 577, 930 P.2d 603, 607 (1996); *see, e.g., Cootz,* 117 Idaho at 41, 785 P.2d at 166. More significantly, this Court has applied the United States Supreme Court's standard for interpreting the due process clause of the United States Constitution to art. I, Section 13 of the Idaho Constitution.

*See, e.g., Smith v. Idaho Dep't of Correction,* 128 Idaho 768, 771, 918 P.2d 1213, 1216 (1996) (due process case involving the deprivation of a liberty interest). Furthermore, in the present case, there is no reasonable basis upon which to expand the due process concepts of liberty or property under the Idaho Constitution beyond the contemplation of the Fourteenth Amendment, to encompass the interest that Maresh claims to have in the particular type of treatment she requested.

Therefore, in the present case, the same analysis used for determining whether Maresh was entitled to procedural due process under the Federal Constitution should be used to determine whether Maresh was entitled to procedural due process under the Idaho Constitution. Application of that same analysis demonstrates that her interest in participating in the MPAC group therapy treatment is not a liberty or property interest protected by due process under the Idaho Constitution. Hence, the district court's decision regarding Maresh's Idaho constitutional claim is affirmed.

**V.**

**CONCLUSION**

For the foregoing reasons, the district court's order granting summary judgment to the Department is affirmed. No attorney fees or costs are awarded to the Department on appeal.

Justices SCHROEDER and WALTERS, concur.

Justice JOHNSON, Dissenting.

I respectfully dissent. Simply stated, this case involves the application of a person for mental health services authorized by statute and provided by the Department at its regional mental health service. The letter denying the application began as follows: "I regret to inform you that when your case was staffed at our June 20, 1995 staff meeting, it was determined that at this time we do not provide the services which would fit your needs, or services that would be clinically appropriate." The question presented to us is not whether the Department should have granted the application, but whether the applicant was given the process to which she

was entitled. In my view, Maresh was entitled to appeal the denial of her request and should have been afforded reasonable notice and opportunity for a fair hearing by the Department. I would not reach the constitutional issues because the state statutes provide the process to which Maresh is entitled.

The director of the Department is required to "[a]dminister public assistance and social services to eligible people." I.C. § 56–202(a). "Public assistance" is defined to include "medical assistance." "Medical assistance" is defined to mean "payments for part or all of the cost of such care and services allowable within the scope of title XIX of the federal social security act as amended as may be designed by department rule." I.C. § 56–201(o). "Social services" is defined to mean "activities of the department in efforts to bring about economic, social and vocational adjustment of families and persons." I.C. § 56–201(d).

The letter denying Maresh's application describes the service she sought as "an educational group that offers our clients more than an opportunity for socialization. We offer our clients a range of skill building classes which include, symptom management, daily living skills, development of provocation skills, etc." This service fits within the definition of "public assistance." This does not mean that Maresh was entitled to the service she sought, only that she is entitled to whatever process the state provides upon the denial of her application.

I.C. § 56–216 provides this process:

**Appeal and fair hearing.**—An applicant or recipient aggrieved because of the state department's decision or delay in making a decision shall be entitled to appeal to the state department in the manner prescribed by it and shall be afforded reasonable notice and opportunity for a fair hearing by the state department.

I would declare that Maresh was entitled to this process.

Chief Justice TROUT CONCURS IN DISSENT.