28 P.3d 1006

**John H. BRADBURY, Plaintiff–Appellant,**

v.

**IDAHO JUDICIAL COUNCIL, Defendant–Respondent.**

No. 26361.

Supreme Court of Idaho, Boise, February 2001 Term.

July 10, 2001.

John H. Bradbury, Lewiston, for appellant.

Hon. Alan G. Lance, Attorney General, Boise, for respondent. Roger L. Gabel argued.

SCHROEDER, Justice.

John Bradbury (Bradbury) appeals the district court order granting the Idaho Judicial Council's (the Council) motion to dismiss his complaint for declaratory judgment seeking access to the Council's records of investigatory proceedings and requesting an order for a new hearing which he and the public could attend. Bradbury asserted his and the public's right of access to Council proceedings. The district court dismissed his claims. This Court affirms the decision of the district court.

## I.

### BACKGROUND AND PRIOR PROCEEDINGS

Bradbury is an attorney practicing law in Idaho who represented parties in a proceeding in district court. Following unsuccessful litigation in that case, he appealed to the Idaho Supreme Court which unanimously affirmed the district court decision. Bradbury subsequently filed a petition for rehearing and a motion to disqualify the authoring justice. Both motions were denied by the Court. Bradbury then filed a complaint with the Council against the authoring justice alleging violations of the Code of Judicial Conduct. The Council conducted proceedings and determined that there were no violations.

Following the decision of the Council, Bradbury requested information from the

Council, including the minutes and the record of the proceedings and the procedure used by the Council in reaching the decision. The request was made pursuant to the public records legislation ensuring citizens the right to examine and copy public records. Idaho Code (I.C.) § 9–338. The Council denied Bradbury's request, stating that the information was confidential and unavailable for release pursuant to Idaho Court Administrative Rule (I.C.A.R.) 32(d)(20).[1]

Bradbury filed an action for declaratory judgment and an order to permit inspection and copying of documents, arguing that the failure to release the information violated both his substantive and procedural due process rights guaranteed by the Fourteenth Amendment of the United States Constitution. Bradbury sought an order from the district court to the Council to provide the material pursuant to I.C. § 67–2340 *et seq.* The Council moved to dismiss the action, and the district court granted the motion, determining that the Council had properly denied the request and that Bradbury's due process rights were not violated. Further, the district court found Bradbury lacked standing to raise the constitutional issue on behalf of the public at large. Bradbury appeals the district court's decision to this Court. He asks this Court to reverse the district court and order the Council to allow him to access the records. He also seeks to have the Council hold a new hearing which he and the public may attend.

## II.

### STANDARD OF REVIEW

I.R.C.P. 12(b)(6) states, in relevant part:
If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56. . . .

▆ The Court's standard of review for an order of the district court dismissing a case pursuant to I.R.C.P. 12(b)(6) is the same as the summary judgment standard of re-

view. *See Coghlan v. Beta Theta Pi Fraternity,* 133 Idaho 388, 398, 987 P.2d 300, 310 (1999); *see also Orthman v. Idaho Power Co.,* 126 Idaho 960, 962, 895 P.2d 561, 563 (1995). After viewing all facts and inferences from the record in favor of the non-moving party, the Court will ask whether a claim for relief has been stated. *Coghlan,* 133 Idaho at 398, 987 P.2d at 310. "The issue is not whether the plaintiff will ultimately prevail, but whether the party is 'entitled to offer evidence to support the claims.' " *Id., citing Orthman* 126 Idaho at 962, 895 P.2d at 563, *quoting Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90, 96 (1974) (citation omitted).

## III.

### THE DISTRICT COURT PROPERLY GRANTED THE MOTION TO DISMISS.

The district court determined that I.C.A.R. 32(d)(20) and I.C. § 1–2103 do not unconstitutionally infringe Bradbury's due process rights and, therefore, he had not asserted a claim upon which relief could be granted. The district court also held that Bradbury had no standing to assert claims on behalf of the public in general. However, the district court determined the merits of Bradbury's claims. Because there are no greater rights in the public at large than Bradbury might possess individually, regardless of whether he has standing to assert claims on behalf of the public, this Court will address the merits of the claims.

### A. Standard Of Review

▆ Because constitutional questions are purely questions of law, they are reviewed *de novo. See V–1 Oil Co. v. Idaho State Tax Comm'n,* 134 Idaho 716, 718, 9 P.3d 519, 521 (2000), *citing Idaho State Ins. Fund v. Van Tine,* 132 Idaho 902, 905–906, 980 P.2d 566, 569–570 (1999). When deciding whether an individual's constitutional rights have been violated, this Court must independently decide whether the facts on the record show a violation of the fundamental constitu-

---

1. I.C.A.R. was amended soon after this suit was filed. This cite to Rule 32(d)(20) is from the

1999 volume of the Idaho Court Rules. The current citation is I.C.A.R. 32(d)(21).

tional rights at issue. The Court should, whenever possible, construe a statute so as to achieve a constitutional result. *See Matter of 1979 Valuation of Parcel No. R2348750330*, 104 Idaho 681, 688, 662 P.2d 1125, 1132 (1983). The general rule is that the party challenging a statute on constitutional grounds "must overcome a strong presumption of validity." *Aberdeen–Springfield Canal Co. v. Peiper*, 133 Idaho 82, 982 P.2d 917 (1999), *citing State v. Avelar*, 129 Idaho 700, 703, 931 P.2d 1218, 1221 (1997); *see also Olsen v. J.A. Freeman Co.*, 117 Idaho 706, 709, 791 P.2d 1285, 1288 (1990). Again it is a general rule that "a legislative act should be held to be constitutional until it is shown beyond a reasonable doubt that it is not so, and that a law should not be held to be void for repugnancy to the Constitution in a doubtful case." *Sanderson v. Salmon River Canal Co.*, 45 Idaho 244, 256, 263 P. 32, 35 (1927). However, the general presumption is not always applicable.

It has been held in some jurisdictions that when it is proposed by a statute to deny, modify, or diminish a right or immunity secured to the people by a clear and explicit constitutional provision, the presumption in favor of the constitutionality of statutes no longer applies, but a contrary presumption arises against the validity of such statute. Similarly, it has been said that the presumption of constitutionality is inapplicable in civil rights cases involving fundamental constitutional rights.

16 Am.Jur.2d *Constitutional Law* § 215 (1979).

■ When a statute infringes on a fundamental right or a suspect class, the presumption is that the statute is invalid unless the state can demonstrate the statute is necessary to serve a compelling state interest. *See Heller v. Doe*, 509 U.S. 312, 319, 113 S.Ct. 2637, 2641, 125 L.Ed.2d 257, 269 (1993) ("A classification neither involving fundamental rights nor proceeding along suspect lines is accorded a strong presumption of validity."); *see also Vacco v. Quill*, 521 U.S. 793, 117 S.Ct. 2293, 138 L.Ed.2d 834 (1997). The United States Supreme Court has stated:

State laws are generally entitled to a presumption of validity against attack....

Not all legislation, however, is entitled to the same presumption of validity. The presumption is not present when a State has enacted legislation whose purpose or effect is to create classes based upon racial criteria, since racial classifications, in a constitutional sense, are inherently "suspect." *McLaughlin v. Florida*, 379 U.S. 184 [85 S.Ct. 283, 13 L.Ed.2d 222]; *Brown v. Board of Education*, 347 U.S. 483 [74 S.Ct. 686, 98 L.Ed. 873]. And the presumption of statutory validity may also be undermined when a State has enacted legislation creating classes based upon certain other immutable human attributes. See, *e.g., Oyama v. California*, 332 U.S. 633 [68 S.Ct. 269, 92 L.Ed. 249] (national origin); *Graham v. Richardson*, 403 U.S. 365 [91 S.Ct. 1848, 29 L.Ed.2d 534] (alienage); *Gomez v. Perez*, 409 U.S. 535 [93 S.Ct. 872, 35 L.Ed.2d 56] (illegitimacy); *Reed v. Reed*, 404 U.S. 71 [92 S.Ct. 251, 30 L.Ed.2d 225] (gender).

In the absence of invidious discrimination, however, a court is not free ... to substitute its judgment for the will of the people of a State as expressed in the laws passed by their popularly elected legislatures.... The threshold question, therefore, is whether the ... statute is invidiously discriminatory. If it is not, it is entitled to a presumption of validity....

*Parham v. Hughes*, 441 U.S. 347, 351–352, 99 S.Ct. 1742, 1745–1746, 60 L.Ed.2d 269, 274–275 (1979).

Among other things, it is normally "within the power of the State to regulate procedures under which its laws are carried out, including the burden of producing evidence and the burden of persuasion," and its decision in this regard is not subject to proscription under the Due Process Clause unless "it offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Speiser v. Randall*, 357 U.S. 513, 523, 78 S.Ct. 1332, 1341, 2 L.Ed.2d 1460, 1471 (1958); *Leland v. Oregon*, 343 U.S. 790, 798, 72 S.Ct. 1002, 1007, 96 L.Ed. 1302, 1308 (1952); *Snyder v. Massachusetts*, 291 U.S. 97, 105, 54 S.Ct. 330, 332, 78 L.Ed. 674, 677 (1934).

*Patterson v. New York*, 432 U.S. 197, 201–202, 97 S.Ct. 2319, 2322–2323, 53 L.Ed.2d

281, 286–287 (1977); *see also Aetna Life Ins. Co. v. Lavoie*, 475 U.S. 813, 106 S.Ct. 1580, 89 L.Ed.2d 823 (1986).

■ Another way of analyzing the presumptions applicable when the constitutionality of a state law is challenged is in terms of the level of scrutiny that is utilized. The United States Supreme Court has adopted three different standards of review: strict scrutiny, intermediate scrutiny, and rational basis. Strict scrutiny should be applied to legislation dealing with fundamental rights or suspect classifications. *In re McNeely*, 119 Idaho 182, 189, 804 P.2d 911, 918 (Ct.App. 1991), *citing United States v. Carolene Products Co.*, 304 U.S. 144, 152–153, 58 S.Ct. 778, 783–784, 82 L.Ed. 1234, 1241–1242 (1938) (citations omitted).[2] Strict scrutiny requires that the government action be necessary to serve a compelling state interest, and that it is narrowly tailored to achieve that interest.

■ Where no fundamental right or suspect classification is involved or when dealing with legislation involving social or economic interests, courts apply the rational basis test's deferential standard of review. In this context, this Court has stated that:

> "Substantive due process" means "that state action which deprives [a person] of life, liberty, or property must have a rational basis—that is to say, the reason for the deprivation may not be so inadequate that the judiciary will characterize it as 'arbitrary.'"

*Pace v. Hymas*, 111 Idaho 581, 586, 726 P.2d 693, 698 (1986) (brackets in original); *see also Sandpoint Convalescent Services, Inc. v. Idaho Dep't of Health and Welfare*, 114 Idaho 281, 756 P.2d 398 (1988); and *In re McNeely*, 119 Idaho at 189, 804 P.2d at 918

(citations omitted). Thus, substantive due process requires that "a statute bear a reasonable relationship to a permissible legislative objective." *Aberdeen–Springfield Canal Co.*, 133 Idaho at 90, 982 P.2d at 925 (citation omitted).

■ When a state law is challenged on constitutional grounds it is necessary to determine the nature of the right claimed to be infringed. If it is a fundamental right, strict scrutiny applies—that is, the presumption in favor of constitutionality is not applicable. The state must show a compelling interest to vindicate the law. If, however, the law does not infringe a fundamental constitutional right, the rational basis text is applicable— the presumption is then in favor of the state. Consequently, this Court must determine the nature of the right claimed in this case.[3]

**B. The Confidentiality of Judicial Council Proceedings Does Not Infringe A Fundamental Right.**

■ Bradbury claims the district court erred in determining that both I.C.A.R. 32(d)(20) and I.C. § 1–2103 are constitutional. The Council's denial of Bradbury's request for a copy of the proceeding's record was based on I.C.A.R. 32(d)(20), which states:

(d) **Categories of Proceedings With Records Exempt From Disclosure.** Except as provided in paragraph (e) of this rule, the following case files and records are confidential and are exempt from disclosure:

. . .

(20) All records and records of proceedings, except the identity of applicants for

---

2. In, *Coleman v. State*, 114 Idaho, 901, 906, 762 P.2d 814, 819 (1988) (Bakes, J. dissenting at n. 2), this Court has delineated a list of rights that the United States Supreme Court has considered fundamental and those that are not: (1) the right to travel interstate, *Jones v. Helms*, 452 U.S. 412, 101 S.Ct. 2434, 69 L.Ed.2d 118 (1981); (2) the freedom of association, *Bates v. City of Little Rock*, 361 U.S. 516, 80 S.Ct. 412, 4 L.Ed.2d 480 (1960); (3) the right to participate in the electoral process, *Harper v. Virginia State Board of Elections*, 383 U.S. 663, 86 S.Ct. 1079, 16 L.Ed.2d 169 (1966); (4) the right to privacy, *Griswold v. Connecticut*, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965); access to courts, *Richmond*

*Newspapers Inc. v. Virginia*, 448 U.S. 555, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980). Those not considered fundamental rights are: (1) the right to an equal education, *San Antonio Independent School Dist. v. Rodriguez*, 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973); (2) the right to government employment, *Massachusetts Board of Retirement v. Murgia*, 427 U.S. 307, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976); and (3) the right to a statute of limitations defense, *Bendix Autolite Corp. v. Midwesco Enterprises, Inc.*, 486 U.S. 888, 108 S.Ct. 2218, 100 L.Ed.2d 896 (1988).

3. It is clear that intermediate scrutiny is not applicable in this case.

appointment to judicial office, of the Idaho Judicial Council or any Magistrate Commission pertaining to the appointment, performance, removal, disability, retirement or disciplining of magistrates, judges or justices. Provided, however, that the record of a disciplinary proceeding filed by the Judicial Council in the Supreme Court loses its confidential character upon filing. I.C. § 1–2103 pertains to the procedure employed in the removal, disciplining, or retirement of judges or justices and states, in relevant part, that:

> All papers filed with and the proceedings before the judicial council or masters appointed by the Supreme Court, pursuant to this section, shall be subject to disclosure according to chapter 3, title 9, Idaho Code, provided, however, that if allegations against a judge are made public by the complainant, judge or third persons, the judicial council may, in its discretion, comment on the existence, nature, and status of any investigation. *The filing of papers with and the giving of testimony before the council or the masters shall be privileged;* but no other publication of such papers or proceedings shall be privileged in any action for defamation except that (a) the record filed by the council in the Supreme Court continues privileged and upon such filing loses its confidential character and (b) a writing which was privileged prior to its filing with the council...does not lose such privilege by such filing.

*Id.* (emphasis added). Bradbury claims that Rule 32(d)(20) and I.C. § 1–2103 violate his due process rights by preventing him from obtaining notice of the Council's proceedings and copies of the records of those proceedings. I.C. § 1–2103 refers to Council papers and proceedings as being "subject to disclosure according to chapter 3, title 9, Idaho Code...." I.C. § 1–2103. However, chapter 3, title 9, exempts from disclosure those records that are "otherwise expressly provided by statute." I.C. § 9–338(1).[4] Following the reference to chapter 3, title 9, I.C. § 1–2103 provides that "the filing of papers with and the giving of testimony before the council on the rosters shall be privileged...." While there may be some Council records subject to disclosure pursuant to I.C. § 1–2103, the

records and proceedings sought by Bradbury are not. Therefore, it is necessary to examine the constitutional challenge Bradbury makes to the confidentiality of the records and proceedings of the Council in this case.

### 1. Substantive due process

The Fourteenth Amendment to the United States Constitution secures both substantive and procedural due process rights. As noted, strict scrutiny should be applied to legislation dealing with fundamental rights or suspect classifications. *In re McNeely*, 119 Idaho 182, 189, 804 P.2d 911, 918 (Ct.App. 1991), *citing United States v. Carolene Products Co.*, 304 U.S. 144, 152–153, 58 S.Ct. 778, 782–783, 82 L.Ed. 1234, 1241–1242 (1938) (citations omitted).

Bradbury argues that strict scrutiny applies in this case because he has a fundamental right of access that has been infringed by the Council's refusal to release the record of the proceedings. Bradbury relies upon United States Supreme Court cases recognizing the right of access in criminal proceedings. The First Amendment right of access is fundamental to criminal trials. *See Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980). The right has been extended to *voir dire* examinations (*Press–Enterprise Co. v. Superior Court*, 464 U.S. 501, 104 S.Ct. 819, 78 L.Ed.2d 629 (1984)); pretrial proceedings (*El Vocero de Puerto Rico v. Puerto Rico*, 508 U.S. 147, 113 S.Ct. 2004, 124 L.Ed.2d 60 (1993)); and courts are required to show a compelling interest before the testimony of child victims of sex crimes are closed to the public (*Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 102 S.Ct. 2613, 73 L.Ed.2d 248 (1982)).

A First Amendment right of access claim attaches in a criminal proceeding where "two complementary considerations" are met. *Press–Enterprise Co. v. Superior Court*, 478 U.S. 1, 8, 106 S.Ct. 2735, 2740, 92 L.Ed.2d 1, 9 (1986), *citing Globe Newspaper Co.*, 457 U.S. at 605, 102 S.Ct. at 2619, 73 L.Ed.2d at 256 and *Richmond Newspapers, Inc.* 448 U.S. at 589, 100 S.Ct. at 2834, 65 L.Ed.2d at 997. First, experience, "whether

---

4. Previously at I.C. § 9–340(1)(9) (1998) and I.C. § 9–340A(1) (1999).

the place and process have historically been open to the press and general public." *Press–Enterprise Co.,* 478 U.S. at 8, 106 S.Ct. at 2740, 92 L.Ed.2d at 9. Second, logic, "whether public access plays a significant positive role in the functioning of the particular process in question." *Id.* at 9, 106 S.Ct. at 2740, 92 L.Ed.2d at 10. Where a proceeding passes these two tests, "a qualified First Amendment right of public access attaches." *Id.* The right of access is not absolute and may be overcome by an "overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Id., citing Press–Enterprise Co.,* 464 U.S. at 510, 104 S.Ct. at 824, 78 L.Ed.2d at 638.

 The Council's proceedings are not criminal nor do they meet the two tests enunciated in *Press–Enterprise.* Historically, Council proceedings have not been open to public access. Since the creation of the Council the initial proceedings have been conducted confidentially. Additionally, it does not appear that public access would play a significant positive role in the functioning of the Council in the initial stage.

The United States Court of Appeals for the Third Circuit has examined confidentiality in judicial review proceedings in the context of an access to court argument in *First Amendment Coalition v. Judicial Inquiry and Review Board,* 784 F.2d 467 (3rd Cir. 1986), in which a local newspaper published portions of the transcript from a judicial review proceeding. The applicable statute prevented disclosure of review proceedings unless the review board made a recommendation to the state supreme court to impose discipline. The newspaper argued that the statute infringed on the right of access to courts by preventing the disclosure of the record. The Third Circuit determined an access to courts argument was "of limited usefulness in the context of the fundamentally different procedures of judicial disciplinary boards" because "[t]hese administrative proceedings, unlike conventional criminal and civil trials, do not have a long history of openness." *Id.* at 472. The Court went on to state that "[f]orcing judicial review proceedings into an older criminal procedural mold would have a stifling effect on a state's ability to use creative methods in solving its problems." *Id.* The Third Circuit ultimately held that the newspaper had failed to show that the right of access justifies restricting a state's freedom of choice to choose a judicial review process that is confidential. *Id.* (stating that "[i]t is quite uncertain whether the state would have chosen a judicial disciplinary program or have been able to implement one in the absence of the confidentiality provision.").

In *Landmark Communications, Inc. v. Virginia,* 435 U.S. 829, 98 S.Ct. 1535, 56 L.Ed.2d 1 (1978), the U.S. Supreme Court dealt with a Virginia statute that allowed criminal punishment for any person who divulged information regarding a judicial review proceeding. A newspaper owner was tried and convicted under the statute for publishing an article identifying a judge who was under investigation by the judicial review board. The Court reversed the conviction and held that "the publication Virginia seeks to punish under its statute lies near the core of the First Amendment, and the Commonwealth's interests advanced by the imposition of criminal sanctions are insufficient to justify the actual and potential encroachments on freedom of speech and of the press which follow therefrom." *Id.* at 838, 98 S.Ct. at 1541, 56 L.Ed.2d at 8. However, the Court in *Landmark* expressly stated that a "constitutional challenge to a State's power to keep the Commission's proceedings confidential," was not before the Court. *Id.* at 837, 98 S.Ct. at 1540, 56 L.Ed.2d at 9. Therefore, the impact of the *Landmark* decision to this case is limited to the Court's discussion in *dicta* acknowledging that several legitimate state interests are served by maintaining confidentiality in judicial review proceedings. *Id.* The state's interests in preserving the confidentiality of judicial review proceedings recognized by the U.S. Supreme Court are: encouraging the filing of complaints, protecting judges from unwarranted complaints, maintaining confidence in the judiciary by avoiding premature announcement of groundless complaints, and facilitating the review process by allowing flexibility through voluntary retirement or resignation of offending judges. *Id., see also The First Amendment Coalition,* 784 F.2d at 476. The Court's holding reversing the criminal conviction rested on its decision that these state

interests, although legitimate, were insufficient to "justify the encroachment on First Amendment [free speech] guarantees by imposing criminal sanctions." *Id.* at 841, 98 S.Ct. at 1542, 56 L.Ed.2d at 11. Nevertheless, the language in *Landmark* supports the idea that judicial disciplinary proceedings may be confidential.

In this case, the legitimate state interests are sufficiently related to the confidentiality procedures encompassed in I.C.A.R. 32(d)(20) and I.C. § 1–2103. Both I.C.A.R. 32(d)(20) and I.C. § 1–2103 require confidentiality only for the limited purpose of allowing the Council to conduct a preliminary investigation into the complaint before determining whether to proceed with a recommendation for discipline with this Court. This limited period of confidentiality is rationally related to the state's legitimate interests and, therefore, meets the rational basis test. Bradbury's substantive due process rights are not violated by either I.C.A.R. 32(d)(20) or I.C. § 1–2103, because the state's interest are rationally related to the statutes' confidentiality requirement in Council proceedings.

#### 2. Procedural Due Process

Bradbury also asserts that the district court erred in concluding that I.C.A.R. 32(d)(20) and I.C. § 1–2103 did not violate his procedural due process rights, arguing that the failure of the Council to provide notice of when the proceedings would take place and allowing the public and Bradbury to attend the proceedings infringed on his procedural due process rights. The district court determined that Bradbury had no property right in the proceeding, because he was only a witness, not a party or a litigant. The district court distinguished Bradbury's rights to those of the judge who was subject of the investigation, who possesses a property right in the proceeding. On this basis the district court determined that Bradbury's procedural due process rights were not infringed.

A procedural due process inquiry is focused on determining whether the procedure employed is fair. The due process clause of the Fourteenth Amendment "prohibits deprivation of life, liberty, or property without 'fundamental fairness' through governmental conduct that offends the community's sense of justice, decency and fair play." *Maresh v. State of Idaho Dep't of Health and Welfare,* 132 Idaho 221, 225–26, 970 P.2d 14, 19–20 (1998) *citing Moran v. Burbine,* 475 U.S. 412, 432–34, 106 S.Ct. 1135, 1146–47, 89 L.Ed.2d 410, 428–29 (1986). Procedural due process is the aspect of due process relating to the minimal requirements of notice and a hearing if the deprivation of a significant life, liberty, or property interest may occur. A deprivation of property encompasses claims where there is a legitimate claim or entitlement to the asserted benefit under either state or federal law. *See id. citing Board of Regents v. Roth,* 408 U.S. 564, 569, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548, 556 (1972). The minimal requirements are that "there must be some process to ensure that the individual is not arbitrarily deprived of his rights in violation of the state or federal constitutions. This requirement is met when the defendant is provided with notice and an opportunity to be heard." *Aberdeen–Springfield Canal Co.,* 133 Idaho at 91, 982 P.2d at 926, *citing State v. Rhoades,* 121 Idaho 63, 72, 822 P.2d 960, 969 (1991); *see also A.E. "Ed" Fridenstine v. Idaho Dep't of Administration,* 133 Idaho 188, 983 P.2d 842 (1999). The opportunity to be heard must occur "at a meaningful time and in a meaningful manner" in order to satisfy the due process requirement. *Aberdeen–Springfield Canal Co.,* 133 Idaho at 91, 982 P.2d at 926, *citing Castaneda v. Brighton Corp.,* 130 Idaho 923, 927, 950 P.2d 1262, 1266 (1998); *see also City of Boise v. Industrial Comm'n,* 129 Idaho 906, 935 P.2d 169 (1997).

Due process, however, is not a concept to be applied rigidly in every matter. It "is a flexible concept calling for such procedural protections as are warranted by the particular situation." *Id.; see also Moran v. Burbine,* 475 U.S. at 432–34, 106 S.Ct. at 1146–47, 89 L.Ed.2d at 428–29; *Mathews v. Eldridge,* 424 U.S. 319, 334, 96 S.Ct. 893, 902, 47 L.Ed.2d 18, 32–33 (1976); *Aeschliman v. State,* 132 Idaho 397, 973 P.2d 749 (1999); *City of Boise v. Industrial Comm'n,* 129 Idaho 906, 935 P.2d 169 (1997); and *Matter of Wilson,* 128 Idaho 161, 167, 911 P.2d 754, 760 (1996).

To determine whether an individual's due process rights under the Fourteenth

Amendment have been violated, courts must engage in a two-step analysis. The Court must first decide whether the individual's threatened interest is a liberty or property interest under the Fourteenth Amendment. *See Maresh*, 132 Idaho at 226, 970 P.2d at 19, *citing Schevers v. State*, 129 Idaho 573, 575, 930 P.2d 603, 605 (1996) (citations omitted); *see also True v. Dep't of Health and Welfare*, 103 Idaho 151, 645 P.2d 891 (1982), *citing Goss v. Lopez*, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975). Only after a court finds a liberty or property interest will it reach the next step of analysis in which it determines what process is due. *See Maresh*, 132 Idaho at 226, 970 P.2d at 19, *citing Schevers* 129 Idaho at 575, 930 P.2d at 605. In this case, since "[t]he requirements of procedural due process apply only to the deprivation of interest encompassed by the Fourteenth Amendment's protection of liberty and property," the existence of Bradbury's right to due process protections regarding his request to access the Council's proceedings depends on whether his interest is within the scope of the liberty or property language of the Fourteenth Amendment. *Maresh*, 132 Idaho at 226, 970 P.2d at 19, *citing Roth*, 408 U.S. at 569, 92 S.Ct. at 2705, 33 L.Ed.2d at 556.

 Whether a property interest exists can be determined only by an examination of the particular statute, rule or ordinance in question. *See Ferguson v. Board of Trustees of Bonner County Sch.*, 98 Idaho 359, 564 P.2d 971, 975 (1977), *citing Bishop v. Wood*, 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976) ("Determination of whether a particular right or privilege is a property interest is a matter of state law."). The existence of a liberty or property interest depends on the "construction of the relevant statutes," and the "nature of the interest at stake." *Maresh*, 132 Idaho at 226, 970 P.2d at 19, *citing True*, 103 Idaho at 154, 645 P.2d 891 (citations omitted). The procedural protection of property guaranteed by the Fourteenth Amendment "is a safeguard of the security of interests that a person has already acquired in specific benefits." *Maresh*, 132 Idaho at 226, 970 P.2d at 19, *citing Roth*, 408 U.S. at 576, 92 S.Ct. at 2708, 33 L.Ed.2d at 560.

 Bradbury claims he possesses a property right which is based on his interest and legal duty to report unethical judicial conduct. This argument is unpersuasive. Merely possessing an interest or being imposed with a duty to report is insufficient to be a property interest such as those protected by the Fourteenth Amendment. The Rules of Professional Conduct for attorneys are not intended to secure a property interest in the reports of misconduct made by attorneys, even where the rules impose a duty on attorneys to report misconduct. Moreover, the property interests protected by the Fourteenth Amendment exist where there is a "deprivation of a significant life, liberty, or property interest...." *Aberdeen–Springfield Canal Co.*, 133 Idaho at 91, 982 P.2d at 926. The interest asserted by Bradbury does not rise to the level contemplated by the Fourteenth Amendment for procedural due process protection. The district court was correct that Bradbury lacked a property interest in the Council's proceedings. Consequently, there was no violation of procedural due process.

## IV.

## CONCLUSION

The decision of the district court is affirmed. Costs are awarded to the respondent.

Justices WALTERS and EISMANN and Justice Pro Tem HURLBUTT concur.

Justice, KIDWELL, dissenting as to the award of costs.

I respectfully dissent to the award of costs to the respondent. Because the Judicial Council is closely associated with the judicial branch of government, I believe the better policy in this instance would be to follow the Court's recent decision in *Teevan v. State*, 130 Idaho 79, 936 P.2d 1321 (1997), and decline an award of costs.