# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 49971

<table>
<tr><td>In the Interest of: Jane Doe,<br>A Child Under Eighteen (18) Years of Age.<br>------------------------------------------------------<br>STATE OF IDAHO, DEPARTMENT OF<br>HEALTH AND WELFARE,<br><br>   Petitioner-Appellant,<br><br>v.<br><br>JOHN DOE (2022-32),<br><br>   Respondent.</td><td>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)</td><td>Boise, December 2022 Term<br><br>Opinion filed: March 1, 2023<br><br>Melanie Gagnepain, Clerk</td></tr>
</table>

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Elmore County. Brent Ferguson, Magistrate Judge.

The decision of the magistrate court is affirmed.

Raúl R. Labrador, Idaho Attorney General, Boise, for Appellant. Jessica Partridge argued.

Elmore County Public Defender/Ratliff Law Offices, Chtd., Mountain Home, for Respondent. Adam Ondo argued.

---

MOELLER, Justice.

This appeal concerns the interpretation of the Interstate Compact on the Placement of Children ("ICPC"), codified in Idaho Code sections 16-2101 through 16-2107, and whether it applies to an out-of-state, non-custodial parent. For the reasons stated below, we affirm the magistrate court's order modifying the case plan and hold that by its plain language, the ICPC does not apply to an out-of-state, non-custodial parent.

## I. FACTUAL AND PROCEDURAL BACKGROUND

John Doe seeks custody of his daughter, Jane Doe, who was removed from the care of her mother in Idaho when a child protection action was initiated by the Idaho Department of Health and Welfare ("IDHW" or "the Department"). Jane Doe and her maternal half-brother were

1

removed from the custody of their mother in December 2020 due to allegations of abusive conduct. Jane Doe had previously been removed from her mother's custody in 2018 due to substance abuse issues.

John Doe is Jane Doe's non-custodial father and lives in Texas with his wife, who is Jane Doe's stepmother, and their child, Jane Doe's paternal half-sibling. At the time of the removal, John Doe was considered a "non-offending parent"—meaning his actions were not the reason Jane Doe was placed in the custody of the State of Idaho. However, the initial "Adjudicatory/Disposition Report of Investigation" filed with the magistrate court noted that John Doe was listed on the Texas Public Sex Offender Website.

The magistrate court exercised jurisdiction over Jane Doe in early 2021 and placed her in the Department's legal custody. As part of the case plan for John Doe, the magistrate court ordered John Doe "to comply with and complete the approval with the ICPC process with the state of Texas[,]" to assess the suitability of John Doe as a placement option for Jane Doe. The ICPC process ordered by the court included a home study and a placement determination.[1]

In April 2021, the State of Texas denied IDHW's request to conduct a home study on John Doe due to John Doe's history, which included two prior sex offenses and a past child protection order, along with allegations of physical abuse, sexual abuse, negligent supervision, physical neglect, and medical neglect. Texas also noted that John Doe is a registered sex offender who had previously failed to register. As a result of its findings, Texas denied IDHW's request for an ICPC investigation of John Doe and never completed a home study.

Despite Texas' initial denial, IDHW moved for reconsideration. While this document requesting reconsideration is not in the record, at a hearing before the magistrate court, counsel for John Doe summarized its contents for the record without objection: "[IDHW] states that [it] did not have current concerns regarding substance abuse, mental health or criminal behavior for [John Doe] and asked for [the ICPC process determination] to be reconsidered . . . ." Texas again denied IDHW's request for an ICPC home study. After the State of Texas rejected these two requests,

---

[1] The ICPC process that the magistrate court refers to in its order is what is also known as a Regulation 2 investigation. Importantly, the intent of Regulation 2 is "to provide at the request of a sending agency, a home study and placement decision by a receiving state for the proposed placement of a child with a proposed caregiver who falls into the category of: placement for public adoption, or foster care and/or with parents, or relatives." AAICPC, ICPC REGULATIONS Reg. 2 Sec. 1 (effective Oct. 1, 2012), https://aphsa.org/OE/AAICPC/ICPC_Regulations.aspx. While the requirement for a home study and placement decision is consistent with the requirement in Idaho Code section 16-2102, the specific language that includes "parents" and "relatives" is not present in Idaho's ICPC statute.

IDHW noted in its brief that "the Department [then] reached out to Texas concerning a 'kinship exception.' " As also noted in IDHW's brief, Texas responded and explained that:

> [John Doe's] history is an Absolute Bar unless an exception is granted. An exception has not been granted based on [Texas] policy. 6624: Obtaining CPS Approval of the Home Assessment and Placement of a Child in a Kinship Home. It has not been established that the child would be safe in the home nor is [sic] there extraordinary circumstances and compelling justification to support approval of the placement despite history."

Following this response, IDHW attempted at least three more times to have Texas complete a home study of John Doe in advance of a possible placement of Jane Doe with her father—each of which Texas denied as a matter of state policy.

Jane Doe's future placement became more complicated in November 2021 when Jane Doe's mother unexpectedly passed away. Jane Doe remained in the State's custody following her mother's death. In February 2022, John Doe moved to amend his case plan and to strike the requirement that he complete the ICPC process. In his memorandum in support of his motion to amend his case plan, John Doe argued three reasons that the magistrate court should amend his case plan: "1. Compliance with the Case Plan task requiring the ICPC is impossible. 2. The ICPC task violates [John Doe]'s substantive Due Process Rights under the United States Constitution's Fourteenth Amendment. 3. The ICPC process, as applied to out-of-state parents, violates the Equal Protection Clause of the United States Constitution's Fourteenth Amendment."

The magistrate court agreed to strike the ICPC requirement, finding that the "plain language of Idaho's ICPC does not apply to parents." Additionally, the magistrate court further held, in the alternative, that even if the ICPC applies to out-of-state parents, it violated John Doe's substantive due process rights and the equal protection rights of out-of-state parents.

IDHW moved the magistrate court for permission to seek immediate appeal from the Idaho Supreme Court, which was granted. IDHW now challenges the magistrate court's ruling, arguing that: (1) the plain language of the ICPC applies to out-of-state, non-custodial parents; (2) the Full Faith and Credit Clause requires compliance with the ICPC; (3) the ICPC does not run afoul of Substantive Due Process as applied to John Doe; and (4) the ICPC does not violate the Equal Protection clause as applied to out-of-state parents.

## II. STANDARD OF REVIEW

Issues of statutory interpretation are questions of law which are reviewed by this Court de novo. *Smith v. Kount, Inc.*, 169 Idaho 460, 463, 497 P.3d 534, 537 (2021) (citing *Hayes v. Cty of*

*Plummer*, 159 Idaho 168, 170, 357 P.3d 1276, 1278 (2015); *State v. Schulz*, 151 Idaho 863, 865, 264 P.3d 970, 972 (2011)). Similarly, "[c]onstitutional issues and the construction and application of legislative acts are pure questions of law over which this Court exercises free review." *Nelson v. Pocatello*, 170 Idaho 160, 508 P.3d 1234, 1240 (2022) (citing *Struhs v. Prot. Techs., Inc.*, 133 Idaho 715, 718, 992 P.2d 164, 167 (1999)).

### III. ANALYSIS

**A. Under the plain language of the statute, Idaho Code section 16-2102 does not apply to out-of-state parents.**

To be clear, this case is not an appeal of a placement decision. Rather, it concerns the procedural safeguards for children that must be satisfied under the ICPC *before* a placement can be made. Thus, this case begins and ends with the plain language of Idaho Code section 16-2102.

As we have often said, "[t]he interpretation of a statute must begin with the literal words of the statute; those words must be given their plain, usual, and ordinary meaning; and the statute must be construed as a whole." *Breckenridge Prop. Fund 2016, LLC v. Wally Enterprises, Inc.*, 170 Idaho 649, ___, 516 P.3d 73, 81 (2022) (quoting *Verska v. Saint Alphonsus Reg'l Med. Ctr.*, 151 Idaho 889, 893, 265 P.3d 502, 506 (2011)). Moreover, "[i]f the statute is not ambiguous, this Court does not construe it, but simply follows the law as written. We have consistently held that where statutory language is unambiguous, legislative history and other extrinsic evidence should not be consulted for the purpose of altering the clearly expressed intent of the legislature." *Id.* (quoting *Verska*, 151 Idaho at 893, 265 P.3d at 506). Importantly, "[a]mbiguity is not established merely because the parties present differing interpretations to the court." *Grace at Twin Falls, LLC v. Jeppesen*, No. 49067, 2022 WL 16641906, at *5 (Idaho Nov. 3, 2022) (citing *Nelsen v. Nelsen*, 170 Idaho 102, ___, 508 P.3d 301, 334 (2022)); *see also Hayden Lake Fire Prot. Dist. v. Alcorn*, 141 Idaho 307, 312, 109 P.3d 161, 166 (2005); *Ada Cnty. Prosecuting Att'y v. 2007 Legendary Motorcycle*, 154 Idaho 351, 354, 298 P.3d 245, 248 (2013) ("[A] statute is not ambiguous merely because an astute mind can devise more than one interpretation of it.").

In this case, the magistrate court looked to Idaho Code section 16-2102, Art. III, as dispositive of whether Idaho's ICPC applies to out-of-state parents, such as John Doe, and concluded:

> The portion of the ICPC relevant to Mr. [John Doe's] motion is codified in Idaho Code 16- 2102, Art. III(a). It states:

4

No sending agency shall send, bring, or cause to be sent or brought into any other party state, any child *for placement in foster care or as preliminary to possible adoption* unless the sending agency shall comply with each and every requirement set forth in this article and with the applicable laws of the receiving state governing the placement of children therein.

(Emphasis added).

The ICPC goes on to state,

[t]he child may not be sent . . . to a receiving state until the appropriate public authorities in the receiving state shall notify the sending agency, in writing, . . . that the proposed placement does not appear to be contrary to the interest of the child.

I.C. 16-2102, Art. III(d).

The plain language of Idaho's ICPC does not apply to parents. The plain language of Art. III(a) applies only to "placement in foster care or as preliminary to possible adoption."

The magistrate court also observed that while "foster care" has not been defined in the ICPC, it has been defined elsewhere in Title 16. Specifically, the magistrate court looked to Idaho Code section 16-1602(20), from the Child Protective Act, which defines foster care as "twenty-four (24) hour substitute *parental care* for children placed *away from their parents or guardians* by persons who may or may not be related to the children and for whom the state agency has placement and care responsibility." (Emphasis added by the magistrate court). The magistrate court also considered, but rejected, the additional authority proffered by IDHW as granting the ICPC authority over out-of-state parents contradicting this definition.[2]

The ICPC authorizes the executive branch of each jurisdiction that has adopted it to designate a compact administrator. As part of that role in Idaho, the compact administrator "shall have power to promulgate rules and regulations to carry out more effectively the terms and provisions of this compact." I.C. § 16-2103. The Association of Administrators of the Interstate Compact on the Placement of Children (AAICPC) has promulgated various regulations to facilitate the administration of the compact, including the scope of placements under the ICPC. The magistrate court noted that one such regulation, Regulation 3 from the AAICPC, states:

---

[2] The magistrate court also referenced the position of the *Idaho Child Protection Manual*. Importantly, while the manual is a compilation of legal resources and "guided by state and federal law governing child protection cases," IDAHO SUPREME COURT: ADMIN. OFF. OF THE CT., *IDAHO CHILD PROTECTION MANUAL* 1 (IDAHO SUPREME CT. CHILD PROT. COMM.) (last revised May 2018), it is not the law, nor does it carry the force of a rule of evidence or procedure. It is intended as a helpful yet fluid resource that is "updated as statutes and best practices change." *Id.* at 5.

Placement of a child requires compliance with the Compact if such placement is made under one of the following four types of placement categories:

. . .

3. Placements with parents and relatives when a parent or relative is not making the placement as defined in Article VIII(a) "Limitations"[.]

The magistrate court recognized that "[w]hen a conflict exists between a statute and a regulation, the regulation must be set aside to the extent of the conflict." (citing *Idaho Cnty. Nursing Home v. Dep't of Health*, 120 Idaho 933, 937, 821 P.2d 988, 992 (1991)). Accordingly, it determined that "Regulation 3 impermissibly expands the ICPC to include parents. The plain language of the ICPC conflicts with Regulation 3 and a court cannot consider a regulation that extends the statute."

IDHW argues the magistrate court erred because, in its view, the statute is ambiguous, and Regulation 3 should inform this Court's reading of the statute. At oral argument, IDHW argued that the many differing interpretations of the ICPC across the nation illustrate that the statute is ambiguous. However, as we have noted, "a statute is not ambiguous merely because an astute mind can devise more than one interpretation of it." *Ada Cnty. Prosecuting Att'y*, 154 Idaho at 354, 298 P.3d at 248. Importantly, this is not one law that 52 separate jurisdictions[3] are attempting to interpret. Instead, the various interpretations of the 52 separate statutes is the product of each jurisdiction's common law tradition, together with other statutes and rules of construction of that jurisdiction.[4] *See, e.g.*, *In Int. of C.R.-A.A.*, 521 S.W.3d 893, 907 (Tex. App. 2017) ("Our conclusion is buttressed by [our Texas state] definitions of 'foster care' . . . in the Texas Family Code . . . . The Code defines 'foster care' as the placement of a child 'in care outside the child's

---

[3] "The Compact is a uniform law that has been enacted by all the fifty states, the District of Columbia and the U.S. Virgin Islands." SECRETARIAT TO THE ASSOC. OF ADMIN'RS OF THE INTERSTATE COMPACT ON THE PLACEMENT OF CHILD., GUIDE TO THE INTERSTATE COMPACT ON THE PLACEMENT OF CHILDREN 3 (revised June 1990), https://www.ojp.gov/pdffiles1/Digitization/146955NCJRS.pdf.

[4] Importantly, the Interstate Compact on the Placement of Children does not run afoul of the Compact Clause of the United States Constitution. As the Third Circuit noted, "[t]he Interstate Compact on Placement of Children has not received Congressional consent. Rather than altering the balance of power between the states and the federal government, this Compact focuses wholly on adoption and foster care of children—areas of jurisdiction historically retained by the states." *McComb v. Wambaugh*, 934 F.2d 474, 479 (3d Cir. 1991) (citing *In re Burrus*, 136 U.S. 586, 593–94(1890)); *Lehman v. Lycoming County Children's Services Agency*, 648 F.2d 135, 143 (3d Cir.1981) (en banc), *aff'd*, 458 U.S. 502 (1982). Thus, as the Third Circuit concluded, "Congressional consent, therefore, was not necessary for the Compact's legitimacy." *Id.* "Because Congressional consent was neither given nor required, the Compact does not express federal law. Consequently, this Compact must be construed as state law." *Id.* (internal citations omitted) (citing Engdahl, *Construction of Interstate Compacts: A Questionable Federal Question*, 51 Va.L.Rev. 987, 1017 (1965)).

6

home in an agency foster group home, agency foster home, foster group home, foster home' or another facility licensed or certified under the Human Resources Code."). This can explain, at least to some degree, the differing interpretations by courts across the country.

IDHW also argues that "the States which have held that the plain language of the ICPC does not apply to out-of-state, non-custodial parents, [] have done so primarily by narrowly focusing on the language of Article III . . . ." Instead, IDHW asserts that "a plain-language reading of the Articles of ICPC requires consideration of the language contained in Articles I and X as well[.]" IDHW advances a broad reading of the ICPC as instructed by Article X and urges this Court to read all the articles together.[5] In reading them together, however, we cannot overlook the definition of *placement* in Article II of the ICPC. Article II provides:

> (d) "Placement" means the arrangement for the care of a child *in a family free or boarding home or in a child-caring agency or institution* but does not include any institution caring for the mentally ill, mentally defective or epileptic or any institution primarily educational in character, and any hospital or other medical facility.

I.C. § 16-2102, Art. II (emphasis added). This definition informs the reading of other provisions of the ICPC using the word *placement* in that such arrangements are limited to the care of a child in a "family free" home, boarding home, a child-caring agency, or child-caring institution.

Notably, this definition of *placement* was dispositive for the Maryland Court of Appeals. The Maryland court initially observed that a " 'family free' home is not defined under the ICPC or by [Maryland's] case law." *In re R.S.*, 470 Md. 380, 404, 235 A.3d 914, 928 (2020). The Maryland court then turned to other states participating in the ICPC. The Maryland court first looked at the Supreme Court of New Hampshire which defined " 'family free home' as 'a home that provides care for a child similar to that which a family would provide, but that, unlike a boarding home, charges no fee for this care.' " *In re R.S.*, 470 Md. 380, 404, 235 A.3d 914, 928 (2020) (citing *In re Alexis O.*, 157 N.H. 781, 787, 959 A.2d 176, 182 (2008)). Next, the Maryland

---

[5] Without labeling its argument as such, IDHW essentially urges us to apply the *in pari materia* canon of statutory construction: "When interpreting related statutes, this Court applies the doctrine of *in pari materia*, which requires they 'should be taken together and construed as one system, and the object is to carry into effect the intention.' " *Gatsby v. Gatsby*, 169 Idaho 308, 317, 495 P.3d 996, 1005 (2021) (quoting *Gomez v. Crookham Co.*, 166 Idaho 249 254, 457 P.3d 901, 906 (2020), *cert. denied*, 142 S. Ct. 2709 (2022)). It is well settled that statutory "[p]rovisions should not be read in isolation, but rather within the context of the entire document." *State v. Lantis*, 165 Idaho 427, 429, 447 P.3d 875, 877 (2019) (quoting *State v. Smalley,* 164 Idaho 780, 784, 435 P.3d 1100, 1104 (2019)). However, "[i]f the language of a statute is unambiguous, the intent of the legislative body as reflected by the statute's plain language must be given effect, and the Court need not consider rules of statutory construction. *Id.*

court looked to a Washington state appellate court decision that defined the term in a similar manner. "According to that court, both 'family free' and 'boarding' homes are 'nonparental residential arrangements that provide children with the kind of care usually received from parents.' " *Id.* (citing *In re Dependency of D.F.-M.*, 157 Wash. App. 179, 188, 236 P.3d 961, 965 (2010)). In relying on those two decisions, the Maryland Court of Appeals concluded that "[b]oth terms refer to a type of 'foster home' and do not appear to contemplate situations where the home of an out-of-state biological parent, whose parental rights are still intact, would constitute a 'placement' under the ICPC." *In re R.S.*, 470 Md. at 405, 235 A.3d at 928–29 (citing Madelyn D. Freundlich, *Reforming the Interstate Compact on the Placement of Children: A New Framework for Interstate Adoption*, 4 U. Pa. J.L. & Soc. Change 15 (1997)). We are persuaded by the Maryland Court of Appeals and other concurring jurisdictions that under the plain language of the statute both "family free" and "boarding" homes are nonparental residential arrangements that provide children with the kind of care usually received from parents—in other words, foster care.

Ultimately, the magistrate court's analysis of Article III is bolstered by a plain reading of the definitions in Article II. Article III provides that: "No sending agency shall send, bring, or cause to be sent or brought into any other party state, any child for placement *in foster care or as preliminary to possible adoption . . . .*" The magistrate court determined that the "foster care or preliminary to possible adoption" language was dispositive as involving placements with those other than parents. However, as Maryland, New Hampshire, Washington, and other states have observed, Article II's definition of "placement" is also inconsistent with application to parents under the plain text of the statute. Thus, read in harmony, the plain text of the ICPC does not support its application to out-of-state parents.

Accordingly, we hold that "placement" as defined in Idaho Code section 16-2101, Art. II(d) does not include an arrangement whereby custody is granted to a parent because the text of Art. II explicitly limits the definition of placement coverage to "*family free* or boarding home or in a child-caring agency or institution . . . ." (Emphasis added). Therefore, the requirements of the ICPC process in Article III does not apply to out-of-state parents. Moreover, we agree with the magistrate court that Regulation 3 impermissibly expands the plain language of the ICPC to include parents. Since the plain language of Idaho's ICPC conflicts with Regulation 3, we must follow Idaho's statute. *Idaho Cnty. Nursing Home*, 120 Idaho at 937, 821 P.2d at 992.

While we recognize the Department's desire to avoid uncertainty in future placement cases by interpreting the ICPC differently, we are bound to interpret the law as it is written. The question of whether the statutory definition of "placement" and "foster care" within Title 16 should be expanded to include parents is ultimately a policy question for the Legislature to decide.

Finally, although the issue of John Doe's fitness for placement of Jane Doe looms in the background of this case, that question is not currently presented for a decision by this Court. Accordingly, we are not called upon to determine John Doe's fitness to parent Jane Doe. Our review is limited to the narrow question of whether the ICPC process applies to out-of-state parents, and we hold that it does not.[6] While that plain language reading is the end of our inquiry, it is not the end of this case. Indeed, as the magistrate court noted in its order "[t]his is not to say that [John Doe] is fit. The ICPC [investigation] process provided Idaho several concerns regarding fitness. However, those concerns are for the [magistrate court] to ultimately consider." In light of our holding that the ICPC does not apply to out-of-state parents, this matter will now return to the magistrate court to properly exercise its reasoned discretion and ultimately determine whether placement with her father is in the best interests of Jane Doe.

## B. We do not address the magistrate court's alternative constitutional basis for its ruling.

Although the magistrate court concluded that by its plain language "Idaho's ICPC does not apply to parents," it held in the alternative that provisions of the ICPC, as applied to John Doe, violate certain constitutional rights. Because we hold that the plain language of the ICPC does not apply to out-of-state parents, we need not address the alternative bases for the magistrate court's decision.

## IV. CONCLUSION

For the reasons stated above, we hold that the plain language of the ICPC does not include placing children with out-of-state parents because it does not fall within a covered "placement" as

---

[6] At oral argument, IDHW expressed concern that the magistrate court would be stuck in a legal limbo because placement of the child in Texas with her father, contrary to Texas' ICPC determination, could subject the magistrate judge here in Idaho to sanctions for an illegal placement under Article IV of the ICPC. However, today we have held that "placement," as defined in Article II of the ICPC, does not apply to parents. Thus, should the magistrate court decide it is in Jane Doe's best interest to be placed with her father, it would not be restricted by Article III since placement with a parent is not included within the definition of "placement" in Article II. Even though the Texas administrator denied the ICPC investigation, the sanctions provision of Article IV would not apply to placement with John Doe because such an arrangement is not a restricted placement under the ICPC. As noted above, Texas courts have interpreted the ICPC's placement language similar to how this Court has ruled today. *See generally In Int. of C.R.-A.A.*, 521 S.W.3d at 907 (Tex. App. 2017).

defined by the ICPC. I.C. § 16-2102. Further, application of the term "foster care" to parental custody would be inconsistent with the definition in other provisions of Title 16 of the Idaho Code. *See* I.C. § 16-1602(20). Accordingly, we affirm the magistrate court's order modifying the case plan on the basis of the plain language of those provisions.

Chief Justice BEVAN, Justices BRODY, STEGNER and ZAHN **CONCUR.**