# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 51263

LISA SÁNCHEZ, an individual, )
)
   Plaintiff-Appellant, )    Boise, April 2025 Term
)
v. )    Opinion filed: June 23, 2025
)
CITY OF BOISE, a municipality and/or )    Melanie Gagnepain, Clerk
political subdivision in Ada County, State of )
Idaho, )
)
   Defendant-Respondent. )

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Ada County. Derrick O'Neill, District Judge.

The judgment of the district court is <u>affirmed</u>.

Stoel Rives, LLP, Boise, for Appellant. Wendy J. Olson argued.

Jones Williams Fuhrman Gourley, PA, Boise, for Respondent. Daniel E. Williams argued.

_____

MOELLER, Justice.

Lisa Sánchez, while serving as a member of the Boise City Council, mistakenly changed her residence to a location outside of the district she represented. She was later informed by the mayor and the city council that she had automatically vacated her seat by moving out of her elected district. The mayor later appointed a new council member to fill her seat for the balance of her term.

Sánchez sued the City of Boise, claiming that she had been improperly removed from office and seeking to be restored to her seat. She later filed an amended complaint in which she also sought damages for lost salary and benefits. The City moved for judgment on the pleadings pursuant to Idaho Rule of Civil Procedure 12(c) and the district court granted the motion, dismissing her case with prejudice. Sánchez now appeals and asks this Court to determine whether, under Idaho Code section 59-901(1)(e), a city council member automatically vacates their seat

1

when they unintentionally move out of the district where they were elected. For the following reasons, we affirm the district court.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

In 2017, Lisa Sánchez was elected to a four-year term as a council member for the City of Boise. In 2020, the Idaho Legislature amended Idaho Code section 50-707A to require cities with a population in excess of 100,000 inhabitants to elect city councilmembers by district, rather than at large. In response, the Boise City Council divided the city into six geographic districts. Sánchez participated in the Council's consideration of, and ultimately voted to adopt, the newly created district boundaries. When Sánchez successfully ran for re-election in 2021, she was elected as a councilmember for District 3. Her second term was set to expire in January of 2024.

In December of 2022, the Boise City Council adopted a map establishing new district boundaries for the upcoming City Council elections in November 2023. Sánchez was once again involved in this process and voted to approve the changes. The new map resulted in slight changes to some boundaries and renumbered the districts. Notably, most, but not all of District 3, which was Sánchez's current district, would become District 6.

In November of 2022, Sánchez was informed by her landlord that the lease on her residence in District 3 would not be renewed for 2023, so she began looking for a new residence. In anticipation of her move, Sánchez "identified a new rental location" and "sought the assistance of the Boise City and Ada County Elections staff to ensure the new address would be within the future District 6," where she intended to run for re-election in 2024. Sánchez exchanged text messages with a Boise City Council staff member regarding a prospective apartment at "412 n. 21st 83702," and received confirmation that this address was within the new District 6. Despite making efforts to ensure that the apartment was located within the boundaries of the new District 6, the record is unclear whether Sánchez determined it was located within the current District 3, the district she was elected to represent.

Although Sánchez requested confirmation that the "412 n. 21st 83702" address was within the future District 6, Sánchez later moved into a different residence on the 400 block of North 19th Street without seeking confirmation that this new address was within her current district. It is undisputed that while the new address was within the boundaries of the future District 6, it was not within the boundaries of the district she was currently representing, District 3. Sánchez moved into this rental on January 1, 2023.

2

On January 10, 2023, prior to a regularly scheduled City Council meeting, Sánchez was asked to meet with city staff, city councilmembers, and Boise Mayor Lauren McLean. At the meeting, councilmembers informed Sánchez that her new address was not within District 3, and that because she moved out of her district, her seat was now vacant and she was no longer a member of the Boise City Council. As a result, Sánchez did not take part in the regularly scheduled meeting that evening.

On January 13, 2023, Mayor McLean informed Sánchez that she intended to appoint a new councilmember to fill the seat formerly held by Sánchez. McLean suggested that if Sánchez became a resident of District 3, she could apply to be re-appointed to her seat, but it was not guaranteed that she would be selected. On the same day, Sánchez moved into a residence that was within the boundaries of District 3.

On April 5, 2023, following an application process in which Sánchez participated, Mayor McLean appointed a new city councilmember to fill the vacant seat in District 3. Sánchez was not selected. Aggrieved, Sánchez filed a complaint in district court on April 11, 2023, alleging that: (1) the City of Boise lacked authority to remove her from her city council seat; (2) the City deprived her of her due process rights in removing her from her seat; (3) she did not vacate her seat; and (4) Mayor McLean's appointment of anyone other than her was void. She later filed an amended complaint adding an additional claim for damages, including lost wages and benefits resulting from her removal.

In response to Sánchez's complaint, the City filed a motion for judgment on the pleadings under Idaho Rule of Civil Procedure 12(c). On September 6, 2023, the district court entered a decision granting the City's motion. In its memorandum decision, the district court concluded that whether Sánchez intended to move out of District 3 was not a relevant consideration since her actions automatically triggered a vacancy under Idaho Code section 59-901(1)(e). The district court held that because the vacancy was complete and mandatory upon Sánchez ceasing to reside in District 3, she received all the due process to which she was entitled. The district court dismissed Sánchez's case with prejudice on September 18, 2023. Sánchez timely appealed.

## II.    STANDARD OF REVIEW

"After the pleadings are closed, but early enough not to delay trial, a party may move for judgment on the pleadings." I.R.C.P. 12(c). "For purposes of a motion for judgment on the pleadings, the moving party admits all the allegations of the opposing party's pleadings and also

3

admits the untruth of its own allegations to the extent they have been denied." *Elsaesser v. Gibson*, 168 Idaho 585, 590-91, 484 P.3d 866, 871-72 (2021) (quoting *State v. Yzaguirre*, 144 Idaho 471, 474, 163 P.3d 1183, 1186 (2007)). A motion for judgment on the pleadings "is reviewed under the same standard as a ruling on summary judgment." *Id*. (quoting *Yzaguirre*, 144 Idaho at 474, 163 P.3d at 1186). "A grant of summary judgment is proper where 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Id*.; I.R.C.P. 56(a). Where there are no disputed issues of material fact, the remaining question is one of law, over which this Court exercises free review. *Id*.

"Issues of statutory interpretation are questions of law which are reviewed by this Court de novo." *State, Dep't of Health & Welfare v. Doe (2022-32)*, 171 Idaho 677, 680, 525 P.3d 715, 718 (2023) (citation omitted). Likewise, constitutional questions are reviewed de novo. *State v. Smalley*, 164 Idaho 780, 783, 435 P.3d 1100, 1103 (2019).

### III.    ANALYSIS

The material facts in this case are not in dispute. In her complaint, Sánchez admits that during her term as a City Councilmember for District 3, she signed a lease and moved into a residence, albeit briefly, outside of District 3. The district court determined that this was enough to trigger an automatic vacancy under Idaho Code section 59-901(1)(e) and concluded that Sánchez's intent to remain a resident of District 3 was not relevant to whether she had vacated her seat. Sánchez ascribes three points of error to the district court's ruling, which we will discuss in turn.

**A. The district court did not err when it concluded that Idaho Code section 59-901(1)(e) applies to cities.**

Idaho Code section 59-901 outlines a variety of ways an elected official's seat may be vacated. This includes the scenario implicated here—when an elected official no longer resides in the area they were elected to represent:

(1) *Every elective civil office shall be vacant upon the happening* of any of the following events at any time before the expiration of the term of such office, as follows:

…

(e) The incumbent *ceasing to be a resident of the* state, *district* or county in which the duties of his office are to be exercised, or for which he may have been elected.

4

I.C. § 59-901(1)(e) (emphasis added). Other reasons an office may be vacated include resignation, death, removal, abandonment or prolonged incapacity, failure to be elected at a proper election, forfeiture, conviction of a felony, or acceptance of a commission to any military office. I.C. § 59-901(1)(a)–(i). Importantly, the events identified in section 59-901(1) expressly apply to "every elective civil office" and result in an immediate vacancy "upon the happening" of a specified event.

Sánchez argues that the district court erred in finding that the plain language of Idaho Code section 59-901(1)(e) applies to cities. Sánchez argues that by the statute's plain and unambiguous language, section 59-901(1)(e) applies only to officials elected to "state, district[,] or county" positions. She maintains that since it does not include cities, towns, or municipalities as political subdivisions, section 59-901(1)(e) does not apply to her city council seat. In the alternative to her plain language argument, Sánchez asserts that "the trial court should have considered rules of statutory construction to determine the Legislature's intent in enacting Section 59-901(e)" and concluded that the legislature intended to omit cities. She argues that the legislature in 1890 could not have intended Idaho Code section 59-901 to apply to city council district elections because elections for city council by districts was not introduced until 1984 when Idaho Code section 50-707A was enacted.

The district court concluded that Idaho Code section 59-901(1)(e) is applicable to city council district elections despite the absence of the word "city." Interpreting the plain language of the statute, the court reasoned that it applies to all elected officials who cease to be residents of the district to which they were elected. Because it found the plain meaning of the statute was unambiguous, the district court did not invoke statutory tools of construction, such as legislative intent. We agree with the district court that Idaho Code section 59-901(1)(e) plainly and unambiguously applies to city council district positions.

Statutory interpretation begins with the statute's plain language. *State v. Dunlap*, 155 Idaho 345, 361, 313 P.3d 1, 17 (2013). The statute should be considered as a whole, and words should be given their plain, usual, and ordinary meanings. *State v. Schulz*, 151 Idaho 863, 866, 264 P.3d 970, 973 (2011). "When determining the plain meaning of a statute, 'effect must be given to all the words of the statute if possible, so that none will be void, superfluous, or redundant.' " *Verska v. Saint Alphonsus Regional Medical Ctr.*, 151 Idaho 889, 897, 265 P.3d 502, 510 (2011) (quoting *In re Winton Lumber Co.*, 57 Idaho 131, 136, 63 P.2d 664, 666 (1936)). "If the statute is not

5

ambiguous, this Court does not construe it, but simply follows the law as written." *Id.* at 893, 265 P.3d at 506.

The plain language of Idaho Code section 59-901(1) states that it applies to "[e]very elective civil office." I.C. § 59-901(1). Because there are no exceptions—express or implied— "every civil office" manifestly includes city council seats. To read section 59-901(1)(e) otherwise, as Sánchez urges, would require us to re-write section 59-901(1) to say that it only applies to "*certain* civil offices." We decline to do so. See *Ada Cnty. Bd. of Equalization v. J.R. Simplot Found., Inc.*, 163 Idaho 75, 79, 408 P.3d 73, 77 (2017) ("The courts are bound by the statute and cannot create or extend by judicial construction an exemption not specifically authorized.")

Importantly, subsection (e) goes on to specify that it applies to residency in the "state, district[,] or county" in which the civil officer may have been elected. Sánchez reads this as a limitation on the statute's reach, rendering it inapplicable to a municipality. Despite the statute's use of the word "district," she maintains that the term does not refer to a district within a city, but to a different, unspecified governmental entity. Therefore, she argues that it does not apply to her former position as the Boise City Councilmember for District 3.

We conclude that section 59-901(1)(e)'s use of the terms "state, district[,] or county" is a non-exclusive geographic reference for designating an area of jurisdiction, not a specification of the political subdivisions to which the statute applies. Black's Law Dictionary broadly defines "district" as "[a] territorial area into which a country, state, county, municipality, or other political subdivision is divided for judicial, political, electoral, or administrative purposes." *District*, Black's Law Dictionary (12th ed. 2024). This reading of section 59-901(1)(e) is also consistent with the statutory pronouncement that it applies to "every civil office." Only a tortured reading of the statute would allow us to construe it as being inapplicable to city council districts, while still applying to library, cemetery, or irrigation districts. Indeed, Sánchez conceded at oral argument that under her reading of section 59-901(1)(e), she could have even moved her residence outside of Boise to neighboring Meridian, and still remained eligible to maintain her seat on the Boise City Council since the statute does not specifically refer to residency within a city. This would be contrary to both the statute's inclusion of "districts" and its specification that it applies to "every" civil office.

For these reasons we affirm the district court's conclusion that Idaho Code section 59-901(1)(e) plainly applies to Sánchez. Because we hold that section 59-901(1)(e) unambiguously

applies to city council district seats, we need not engage in any statutory construction relating to what the legislature's intent was in 1890 when it enacted section 59-901 as urged by Sánchez.

### B. The district court did not err in holding that Sánchez's intent to remain a District 3 resident was irrelevant.

Next, Sánchez argues that even if section 59-901(1)(e) applies, the trial court still had to determine whether she intentionally "ceas[ed] to be a resident" of District 3. Sánchez argues that the question of whether she intended to move out of District 3 is a highly factual inquiry; therefore, judgment on the pleadings was inappropriate as a matter of law. She urges this Court to harmonize its reading of "resident" in Idaho Code section 59-901(1)(e) with the definition of "residence" found in Idaho Code section 50-402.[1] She maintains that reading Idaho Code section 50-402 in *pari materia* with Idaho Code section 59-901(1)(e) suggests that her 13-day absence from District 3 should be seen as temporary. Because her absence was only temporary and she did not intend to change her residency, she maintains she never ceased to be a resident of District 3.

The City counters that Sánchez's intent to remain a resident of District 3 is irrelevant. The City argues that to read an intent element into Idaho Code section 59-901(1)(e) would require the Court to insert words into the statute. Rather, the City argues that under the everyday meaning of "cease" and "resident," Sánchez's act of moving out of District 3 automatically triggered a vacancy under section 59-901(1)(e). The district court agreed, concluding that Sánchez's intent to remain a resident in District 3 is not a relevant consideration.

It is a well-established principle of statutory construction that this Court will not turn to tools of construction, such as reading a provision from one statute in *pari materia* with another related provision, absent a finding that the original term or phrase is ambiguous. *See In re Adoption of Doe*, 156 Idaho 345, 349-50, 326 P.3d 347, 352-53 (2014). Just because Idaho Code section 59-

---

[1] Idaho Code section 50-402(d)(1) concerns municipal elections. In defining the words used "in this chapter," it states:

> "Residence" for voting purposes, shall be the principal or primary home or place of abode of a person. Principal or primary home or place of abode is that home or place in which his habitation is fixed and to which a person, whenever he is absent, has the present intention of returning after a departure or absence therefrom, regardless of the duration of absence. In determining what is a principal or primary place of abode of a person the following circumstances relating to such person may be taken into account: business pursuits, employment, income sources, residence for income or other tax pursuits, residence of parents, spouse, and children, if any, leaseholds, situs of personal and real property, and motor vehicle registration.

I.C. § 50-402(d)(1).

901(1)(e) does not define "resident" does not render it ambiguous. As we have said before, "[w]here the legislature has not provided a definition in a statute, terms in the statute are given their common, everyday meanings." *Edwards v. Idaho Transportation Department*, 165 Idaho 592, 448 P.3d 1020 (2019). "Undefined words of statutes are to be given their plain, obvious, and rational meanings." *Id.*

The everyday meaning of the phrase "ceasing to be a resident" is not ambiguous; therefore, there is no need to turn to a different title of the Idaho Code to borrow its definition of the similar term "residence." "Ceasing" means the act of stopping, ending, or terminating. More formally, "cease" is defined as "to come to an end," or to "no longer continue." *Cease*, Merriam Webster, (11th ed. 2003). "Residence" on the other hand is commonly understood to mean the place where one dwells (i.e., lives). Indeed, Merriam-Webster defines a "resident" as "one who resides in a place." *Resident*, Merriam-Webster (11th ed. 2003). Combining the words "ceasing to be a resident" as they appear in the statute, we conclude that Sánchez vacated her seat when she *stopped living in* or *no longer inhabited* a home in District 3. A plain reading of the statute requires nothing more. This occurred on January 1, 2023, when the parties agree that Sánchez moved out of District 3. We will not insert an intent element into section 59-901(1)(e) where the legislature did not include it. *See In Re Order Certifying Question to Supreme Court of Idaho*, 169 Idaho 135, 140, 492 P.3d 1094, 1099 (2021) (quoting *Saint Alphonsus Reg'l Med. Ctr. v. Gooding Cty.*, 159 Idaho 84, 89, 356 P.3d 377, 382 (2015)).

The lack of an intent requirement in section 59-901(1)(e) is further bolstered by the statute's inclusion of the phrase "*upon the happening*." "Upon the happening" indicates the automatic nature of section 59-901(1)(e), rendering it self-executing. The only event required to trigger application under subsection (e) is the elected official moving out of the district where they are elected. Once that happens, a vacancy has occurred and the elected official no longer holds the seat. The short or inadvertent nature of Sánchez's residence outside of District 3 does not change the result.

In furtherance of her argument that this Court should look at her intent and the temporary nature of her residence outside of District 3, Sánchez analogizes her case to *State v. McDermott*, 52 Idaho 602, 17 P.2d 343 (1932). McDermott was convicted of forgery. *McDermott*, 52 Idaho at 605, 17 P.2d at 344. On appeal, McDermott argued that the probate judge presiding over the case had vacated his seat when he had been gone from the state for five weeks. Therefore, the probate

8

judge was no longer a de jure judge and had no right to preside over McDermott's preliminary hearing. Absent a preliminary hearing, there was no proper commitment, and no jurisdiction to try McDermott. *Id.* On appeal, this Court considered whether the probate judge's absence meant that he had abandoned his office, thereby creating a vacancy. The Court held that "a mere temporary removal, without intention to make a permanent change of residence, or surrender or abandon the office, or to cease to perform his duties, does not affect the tenure of the office." *McDermott*, 52 Idaho at 609, 17 P.2d at 346. Because the record before the Court failed to "disclose any intention on the part of [the judge] to abandon his office of probate judge, or that it has been judicially determined that he has forfeited his right to said office," the Court held that he was still a de jure probate judge, duly elected, qualified, and acting as such during McDermott's preliminary hearing. *Id*.

Importantly, *McDermott* did not concern an incumbent changing his residence from the location where the duties of his office were to be exercised; instead, it concerned an incumbent who had possibly abandoned his position by being gone for several weeks. Because *McDermott* proceeded under an abandonment theory—as opposed to a change of residence under section 59-901(1)(e)—we agree with the district court's conclusion that it did not apply here. While abandonment of an elected position due to an extended absence may require an inquiry into the official's intent, whether an official vacates their position by moving their residency outside the district where they were elected does not require this same factual inquiry into their intent. *McDermott*, 52 Idaho at 608–09, 17 P.2d at 346. Thus, *McDermott* is not applicable because the City has not alleged Sánchez abandoned her seat.

Unlike the probate judge in *McDermott*, Sánchez was not merely taking a leave of absence—she indisputably moved from her only residence into a new residence. Sánchez's lease in District 3 was up and she was seeking a new place to reside when she moved. While she made efforts to ensure that her new residence was located within a specific future district, she did not inquire whether her new residence was located within the district she was currently representing.

Because under the plain language of Idaho Code section 59-901(1)(e), intent is not a requirement to trigger a vacancy, we conclude that, a vacancy occurred when the undisputed facts show Sánchez stopped living in District 3 on January 1, 2023. This is all that was required under subsection (e). Therefore, whether Sánchez intended to remain a District 3 resident is irrelevant. While Sánchez did not realize that she no longer resided in District 3 when she moved into a new

apartment, we "cannot ignore or re-write the plain language of a statute" in order to reach Sánchez's desired result. *Berrett v. Clark Cnty. Sch. Dist., No. 161*, 165 Idaho 913, 928, 454 P.3d 555, 570 (2019). Thus, we affirm the district court's conclusion and hold that Sánchez's intent is not relevant to whether a vacancy occurred under Idaho Code section 59-901(1)(e) because the vacancy occurred automatically on January 1, 2023, when Sánchez moved outside of District 3.

### C. The district court did not err in concluding that no additional due process was required before Sánchez could be removed from office.

Lastly, Sánchez contends that the district court erred by failing to directly address whether she had a valid due process claim under the Fourteenth Amendment. The district court concluded that section 59-901(1)(e) is "clear and mandatory" that as soon as Sánchez moved out of District 3, the statute provided that her "civil office <u>shall</u> be vacant." Thus, it concluded that no additional process was due. On appeal, Sánchez argues that the district court erred because she was entitled to both notice and an opportunity to be heard prior to her seat being deemed vacant.

The Fourteenth Amendment's Due Process clause requires that there be some process to ensure that individuals are not arbitrarily deprived of life, liberty, or property rights in violation of the state or federal constitutions. *Greenfield v. Meyer*, 174 Idaho 774, 785–86, 560 P.3d 517, 528–29 (2024). "This requirement is met when [individuals are] provided with notice and an opportunity to be heard." *State v. Rhoades*, 121 Idaho 63, 72, 822 P.2d 960, 969 (1991). "[D]ue process is not a concept rigidly applied" but instead is "a flexible concept calling for such procedural protections as are warranted by the particular situation." *Boise Orthopedic Clinic v. Idaho State Ins. Fund* (*In re Wilson*), 128 Idaho 161, 167, 911 P.2d 754, 760 (1996).

The first step in any due process analysis is to determine whether the individual has a protected liberty or property interest under the Fourteenth Amendment. *Bradbury v. Idaho Jud. Council*, 136 Idaho 63, 73, 28 P.3d 1006, 1016 (2001). "Whether a property interest [protected by due process] exists can be determined only by an examination of the particular statute, rule or ordinance in question." *Id.* Moreover, whether a property interest exists is a matter of state law. *Ferguson v. Bd. of Trs. of Bonner Cnty. Sch. Dist. No. 82*, 98 Idaho 359, 363, 564 P.2d 971, 975 (1977) (citing *Bishop v. Wood*, 426 U.S. 341 (1976)).

This Court has not previously addressed whether a public elective office is a protected property interest under the due process clause; however, we need not decide that issue today. Even if we assume arguendo that Sánchez had a property interest in her elected office—which

10

examination of Idaho Code section 59-901(1)(e) gives no indication of—she forfeited that interest when she moved outside of her district boundaries. Thus, any potential property interest in Sánchez's elected seat was lost on January 1, 2023, as a result of her own actions. Absent any protected property interest to an elected position she no longer holds, Sánchez is not entitled to additional process. *See Bradbury*, 136 Idaho at 73, 28 P.3d at 1016 (holding that "[o]nly after a court finds a liberty or property interest will it reach the next step of analysis in which it determines what process is due"). Thus, we conclude that the district court did not err in concluding no additional process was required.

## IV. CONCLUSION

For the foregoing reasons, the district court's order entering Judgment on the Pleadings in favor of the City is affirmed.

Chief Justice BEVAN, Justices BRODY, ZAHN, and MEYER CONCUR.